KROLIK *v.* CURRY.

1. JUDGMENT—RES ADJUDICATA—MATTERS CONCLUDED.

A judgment in Canada in favor of a corporation in a suit against it for fraud by means of misrepresentations in the sale of land bars a subsequent suit in this State against the officers of the corporation for the same fraud.

2. COMPROMISE AND SETTLEMENT—EFFECT.

Where, after affirmance of a judgment in favor of a corporation in an action against it for rescission of a contract for the sale of land, or for damages for fraud, the plaintiffs settled the controversy with the corporation, such settlement bars a subsequent suit against the officers of the corporation for the same fraud.

3. PRINCIPAL AND AGENT — FRAUD OF AGENT — LIABILITY OF PRINCIPAL.

A principal accepting the benefits derived from the misrepresentations of his agent, acting within the scope of his authority, is liable.

4. SAME—ACTION—PARTIES.

Where a principal is liable for the misrepresentations of his agent because of ratification, both may be joined in the same action, or each may be sued separately.

Error to Wayne; Brooke, J. Submitted February 15, 1907. (Docket No. 47.) Decided April 30, 1907.

Assumpsit by Day Krolik against John Curry and others for fraud and deceit. There was judgment for defendants on a verdict directed by the court, and plaintiff brings error. Affirmed.

This is an action of assumpsit, brought under 3 Comp. Laws, § 10421, for fraud alleged to have been committed by the defendants in inducing the plaintiff and his assignors to enter into a contract for the purchase of certain land in Windsor, Canada. Plaintiff and his assignors were residents of the city of Detroit. Some of the defend-

ants lived in Detroit and others in Windsor; the two cities being on opposite sides of the Detroit river. All resided within a short distance of the land. Its location and character were open to their inspection by the expenditure of a short time and a few cents for transportation across the river. The issues and facts involved are well stated by the learned circuit judge in directing a verdict for the defendants Curry and Anderson, which statement we adopt. It is as follows:

"This is an action brought by Day Krolik, on behalf of himself and as assignee of seven others, against John Curry and James Anderson, Howard G. Harris, and Frank M. McMath, as defendants; the gist of the action being that of fraud. It appears from the exhibits and evidence in the case that the plaintiff and his associates in the year 1892 purchased from the Essex Land, Loan & Improvement Company some 11.2 acres of land in the city of Windsor. Among those associated with the plaintiff in the purchase of the land was one Frank M. McMath, who took a one-tenth interest in the purchase. Some year or two after the purchase McMath sold his interest out to others, and the plaintiff and his then associates continued to hold the property in question up to the year 1900. The land was purchased by the plaintiff and his associates at a time when land values in Detroit and Windsor were very high; the year 1892 having seen values in real estate reach their highest point. It became obvious, however, shortly after that these were fictitious values, and the plaintiff and his associates found themselves unable to dispose of the property at a profit. Various efforts were made by them to close it out during the succeeding eight years until 1900, when an effort was made to dispose of it at auction. This proved abortive, and shortly after that auction sale the plaintiff claims that it was discovered that one of his associates, McMath, to whom I have already adverted, had received $1,000 from the Essex Land, Loan & Improvement Company, as commission for effecting the sale. Thereupon notice of a rescission of the contract was served upon the Essex Land, Loan & Improvement Company. The company, however, refused to rescind the contract. Some time after this happened the plaintiff in this suit and his associates commenced a suit in the high court of justice of Ontario.

This was in the year 1902. This suit was brought for a rescission of the contract, or, if the court should find that the plaintiffs were not entitled to a rescission, then for damages against the Essex Land, Loan & Improvement Company for deceit practiced upon them by that company, through its agents, Curry and Anderson, two of the defendants here. That case was heard by the court without a jury, and the opinion of the learned judge who heard the case goes into the facts quite fully, and finds distinctly that no fraud was perpetrated by the Essex Land, Loan & Improvement Company, through its agents, Curry or Anderson, either in respect of these representations made by McMath as to the value of the land, or in the matter of the concealment from Krolik and his associates of the fact that a commission of $1,000 has been paid by the company to McMath for securing a purchaser for the land. Krolik and his associates appealed that case to the court of appeals for Ontario, and a decision was handed down by the court of appeals upon the 27th day of November, 1903. According to the terms of the judgment then entered, the decision of the court below was affirmed, with the single exception that the plaintiffs were there given leave to apply to the master, when the accounting between the parties was had under the judgment, to be allowed a credit on account of the $1,000 paid to McMath as commission.

"The matter stood in that shape until April 28, 1904, nearly six months later, when the parties, through their proper representatives, got together in Windsor and settled that action and entered into a new agreement. By the terms of that settlement and agreement, the plaintiffs returned to the Essex Land, Loan & Improvement Company the lands then held by them, and turned over to them the outstanding contracts upon the same, and agreed to pay and did pay the sum of $4,600 in lieu of the amount then due upon the original contract, which was, as I understand it, some $8,000 or $9,000, and the Essex Land, Loan & Improvement Company undertook to carry out the contracts entered into by Krolik and his associates for the sale of the individual parcels of said land, to hold them harmless on account of their covenants respecting the same, and to release them from all of their several obligations under the original contract which was canceled and assigned. The terms of the new agreement were carried out in all respects.

" Three months later, or on the 27th day of July, the suit at bar was commenced by Day Krolik, acting for himself and as assignee of all the other parties who had been parties plaintiff in the suit in Ontario, and this suit is against Curry, Anderson, McMath, and Harris. Mc-Math seems to have left the jurisdiction of this court and has not been served, and no appearance has been made on his behalf. Harris has all the time since the happening of the events narrated been a resident of Michigan, and therefore the statute of limitations has run against him, so that although the plaintiff was obliged to make the defendant Harris a party, it being his claim that Harris was a participant in the fraud perpetrated upon him, and one of the conspirators in the fraudulent acts complained of, yet he admits here that he is not entitled to any relief as against Harris by reason of the fact that the statute of limitations has run in behalf of said Harris. So that, as the case stands, it is in effect a case of Day Krolik, acting for himself and as assignee of his associates, against Anderson and Curry, for fraud and deceit practiced upon them in the sale of this property to them through McMath.

" After the examination of the plaintiff, Day Krolik, and the introduction of various exhibits constituting the testimony, opinions, and judgments in the Canadian courts, the attorneys for the various defendants move that the court direct a verdict for the defendants upon two grounds: *First*, that the subject-matter of this suit, to wit, the fraud of Curry and Anderson in inducing this plaintiff and his associates to enter into this contract through misrepresentations made by McMath, has already been litigated in the suit tried in Canada, and is therefore res judicata; or, in other words, settled by the judgment in the Canadian case. The second claim made by the defendants' counsel is that, even though the judgment of the Canadian court does not constitute a bar to the prosecution of this action, the settlement arrived at between the parties upon April 28, 1904, and the new contract then entered into, operates as an accord and satisfaction between the parties to this suit, and also as a waiver of any rights which the plaintiffs might have had to proceed against these two defendants for fraud and deceit, under the original contract.

" Upon the first of these questions, it seems to me quite clear that the judgment of the court of appeals fully affirms the judgment of the lower court, which I under-

stand to mean that the plaintiffs failed to make out a case of fraud against the defendant, the land company. It is quite obvious that the Essex Land, Loan & Improvement Company could not be guilty of fraud, except through the acts of its executive officers, and those executive officers are and were then Curry and Anderson, the two defendants who are here, and who it is admitted conducted all the negotiations and did all the acts which constitute the subject-matter of this litigation. It is true-that the court of appeals intimated that Justice Falconbridge might be in error with regard to the $1,000 commission paid; but the plaintiff has up to the present time declined to avail himself of the intimation contained in the judgment of the court of appeals, and, in fact, by his settlement of that suit, has now precluded himself from the right to avail himself of that clause, unless we assume that, in the adjustment had between the parties already adverted to, that was taken into consideration, as it doubtless was.

"I have therefore reached the conclusion, upon this branch of the case, that the whole question now before us for consideration has been litigated and a final judgment had thereon upon the merits in another jurisdiction, and that by that judgment the court declared that no fraud had been committed by the Essex Land, Loan & Improvement Company, and by clear inference no fraud had been committed by Curry or Anderson, its executive officers.

"Touching the second question, that of the settlement, it may be true, as urged by counsel for the plaintiff, that when the settlement was reached between the plaintiffs and the Essex Land, Loan & Improvement Company, and the new agreement entered upon, it was not specifically set down that each party released the other party, its agents, and privies from any claim, but it seems to me obvious that it was the clear intention of the parties at that time to reach an adjustment of this whole matter. By that settlement this plaintiff clearly adjusted whatever was in controversy in that suit, and it is idle to claim that among the things sued for was not the question of damages for the alleged fraud and deceit of these two defendants as representing the corporation, the land company. So that, in view of that adjustment and settlement, whether or not the judgment entered in the appellate court operates as a bar to the prosecution of this action, I am constrained

to instruct you that the cause of action for which this present suit is brought, has been fully adjusted and satisfied.

"Your verdict will therefore be for the defendant."

The learned trial judge of the Canadian court, in his opinion, said:

"The defendant company did not recognize the attempted rescission, but continued to claim payment of the balance due to them under the agreement, and this action was not brought until June 5, 1902, more than 10 years after the date of the agreement. Leaving out of consideration for the moment the question of the responsibility of defendant company for any statements of McMath, I should not find on this evidence the alleged misrepresentations as to the value to have been anything more than a statement of opinion. I do not know that I would be justified in finding any statement which he made to have been so flourishing as to reach the limit of exaggeration.

"Eighteen ninety-two was, in the parlance of the day, a 'boom' time for Windsor. Prices were no doubt beyond actual values for any immediate purpose except to sell again, but still higher prices were looked for. The purchasers could have no ground for neglecting to examine for themselves property so accessible, and to ascertain its real condition.

"The president and secretary of the defendant company swear that it was worth the price paid in 1892, and is worth it now, although it was not so probably in 1900. Mr. H. T. W. Ellis says that he would not have taken less than $1,000 or $1,200 per acre for it if it had been his in 1892.

"Mr. B. H. Rothwell says he would not be afraid to take it today at $1,000 an acre, and make money out of it. Mr. Noble A. Bartlett thinks the price paid was fair at the time. Mr. Patrice Guillette says it was worth in 1892, according to the properties around it, $1,000 an acre, anyway. There were other witnesses who gave opinions of value of a widely different character, but these examples are sufficient to show that no man expressing an opinion on the same line of these gentlemen could be accused of making a fraudulent misrepresentation.

"I do not find that there was any fraudulent suppression of the fact that McMath was getting a commission from the defendant company brought home to any officer

or member of the company. They simply employed him as an agent to sell the land for a definite commission. The amount of the commission was $1,000, which was large, having regard to the amount of the purchase money, $11,500, but that is explained by the fact that the defendants, who were also interested in other adjoining properties, thought they were securing purchasers who would advertise, develop, and 'boom' the property to the advantage of the other interests which defendants had in the vicinity. And I find, as a fact, that defendant company, being moved by these considerations, refused an offer which would have netted them $700 more than plaintiffs agreed to pay.

"I do not find that the mere fact that Curry was told by McMath that he (McMath) was taking a temporary interest in the transaction cast on him the duty of informing the others that McMath was getting a commission and to what amount. This statement, made in Krolik's presence, was likely to have the opposite effect upon Curry, and it was the duty of Krolik then to have investigated the nature of the relations between McMath and the vendors.   *   *   *

"The action will be dismissed, with costs, and there will be a judgment for defendant company on the counter-claim, with costs, amount of balance due to be settled by the master, if the parties cannot agree."

*Bernard B. Selling*, for appellant.

*Malcolm McGregor* and *Brennan, Donnelly & Van De Mark*, for appellees.

GRANT, J. (*after stating the facts*). By the judicature act of the Ontario legislative assembly of 1881, it was enacted:

"The high court of justice and the court of appeal respectively, in the exercise of the jurisdiction vested in them by this act in every cause or matter pending before them respectively, shall have power to grant, and shall grant, either absolutely, or on such reasonable terms and conditions as to them shall seem just, all such remedies whatsoever, as any of the parties thereto may appear to be entitled to, in respect of any and every legal or equitable claim properly brought forward by them respectively

in such cause or matter; so that, as far as possible, all matters so in controversy between the said parties respectively may be completely and finally determined and all multiplicity of legal proceedings concerning any of such matters avoided." 1 Rev. Stat. 1887, chap. 44, § 52, subd. 12.

The rules adopted by the Canadian court provide:

" Every statement of claim shall state specifically the relief which the plaintiff claims, either simply or in the alternative, and may also ask for general relief. And the same rule shall apply to any counterclaim made, or relief claimed by the defendant, in his statement of defense. If the plaintiff's claim be for discovery only the statement of claim shall show it. * * *

" All persons may be joined as defendants against whom the right to any relief is alleged to exist, whether jointly, severally or in the alternative, and, without any amendment, judgment may be given against one or more of the defendants, according to their respective liabilities."

The plaintiffs planted their suit in Canada under the above act and rules of pleading. They deliberately asked two remedies: (1) The rescission of the contract; and (2), if they were not entitled to rescission, damages for fraud alleged to have been practiced upon them by the agents of the corporation. The corporation through its officers, the appellees in this suit, specifically denied the fraud and misrepresentations, and asserted a counterclaim for the amount due under the contract, and asked judgment for that amount. All the issues that are now made were there deliberately made by the plaintiffs. All the issues were decided against them. Not content with the decision of the trial court, they appealed to the appellate court, and in their statement of claim, which, under the practice in Canadian courts, they were required to make, they deliberately alleged error, both in the failure to grant the rescission of the contract, or, in the alternative, to give damages for the fraud, if they were denied rescission.

This, therefore, is not a case of mistaking a remedy. It is rather a case where the plaintiffs seek to try anew

the same issues that were tried in the Canadian court. Where a litigant has chosen to proceed against the agents of a corporation for misconduct on their part and has been defeated, he is thereby barred from litigating the same cause of action against the principal. *Emma Silver Mining Co. (Limited)* v. *Emma Silver Mining Co. of New York*, 7 Fed. 401. It follows that a determination of the issue in a suit brought against the principal bars an action against the agents. *Emery* v. *Fowler*, 39 Me. 329.

After the affirmance of the judgment in the appellate court the plaintiffs settled the entire controversy. They were relieved from the payment of a large part of the judgment against them, and reconveyed the property to the corporation. That settlement was made with and through the appellees, Anderson and Curry, as the duly authorized officers of the corporation. McMath, who is charged with making the false representations as to value, was the accredited agent of the corporation to effect the sale.

We agree with the finding of the Canadian court that there was no false representation as to value. Plaintiffs bought the land for speculation. They bought during a "boom," when values were at the highest point. They soon after contracted to sell some of the lots for $6,950. They were sold upon a contract, and, with the fall of the boom, prices went down, and most of the lots reverted to them. They would have realized a very large profit on these lots, in some cases 100 per cent.

It is not claimed that Anderson and Curry made any representations or authorized McMath to make any representations as to the value. The court was right in holding that the representations were simply expressions of opinion. Counsel for the plaintiffs seek to make the fraud in this case a deceit, and therefore claim that the corporation would not be liable in an action for deceit. The true test is: Was the fraud or deceit (the name is immaterial) practiced by the agent one for which the princi-

pal is liable? If the agent acts within the scope of his
authority and his principal accepts the benefits derived
from the misrepresentations, the principal is liable, and
both may be joined in the same action, or each may be
sued separately.

In the case of *Wilson* v. *Hotchkiss,* 2 Ont. L. R.
261, the court says:

" The case established is the ordinary one of principal
and agent, and there is nothing to take it out of the
general rule that the master or principal is answerable for
every such wrong of his servant or agent, as is committed
in the course of his service or for his master's or principal's
benefit, or, to speak more accurately, for his master or
principal, though no express command or privy be proved."

See, also, *Mackay* v. *Commercial Bank of New
Brunswick,* L. R. 5 P. C. 394; *Citizens' Life-Assur-
ance Co.* v. *Brown,* A. C. (1904) 428; *Frankenburg* v.
*Horseless Carriage Co.,* L. R. 44 Q. B. Div. 504; *On-
tario Industrial Loan & Investment Co.* v. *Lindsay,*
4 Ont. R. 473; 10 Cyc. p. 1207; 2 Current Law, pp. 60–
68.

It follows that the entire issue in this case was settled
against the plaintiffs by the judgment of the Canadian
court, and is res adjudicata. It also follows that the
settlement with the corporation was also a settlement with
these defendants.

The judgment is affirmed.

MCALVAY, C. J., and CARPENTER, BLAIR, and MONT-
GOMERY, JJ., concurred.