DePOLO *v.* GREIG.

1. LICENSES—BLUE SKY LAW—SALE OF UNVALIDATED STOCK—PRESI-
DENT.
   The president of a corporation who was its agent in making the
   sale of its unvalidated stock would be jointly and severally
   liable under the blue sky law (CL 1948, § 451.120).

2. PLEADING—AMENDMENT—RES JUDICATA.
   It was not error nor an abuse of discretion on part of trial court
   to allow defendant to amend answer so as to permit defense
   of *res judicata,* where there had been no final adjudication in
   Federal court theretofore in proceedings involving issues pre-
   sented in instant case.

3. LICENSES—BLUE SKY LAW—UNVALIDATED STOCK—WAIVER.
   Waivers releasing corporation and its officers from all liability
   in connection with purchase of stock with knowledge that
   stock being purchased had not been validated, when considered
   with subsequent conduct including acceptance of directorship
   and vice-presidency and more or less active participation in
   management until huge loss sustained on one order forced the
   corporation into bankruptcy, established estoppel (CL 1948,
   § 451.120).

4. SAME—PRINCIPAL AND AGENT—HUSBAND AND WIFE—WAIVER.
   Wife, as principal on whose behalf plaintiff husband purchased
   unvalidated stock and executed waiver releasing corporation
   and its officers from all liability in connection with such pur-
   chase and thereafter participated more or less actively in
   management of the corporation, was estopped by the acts of
   her agent.

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur, Securities Acts § 46.
[1] Blue Sky Laws. 87 ALR 42.
   Personal civil liability of corporate officers and directors in case
   of sale of bonds or stock in violation of statutory requirements.
   144 ALR 1356.
[4] 19 Am Jur, Estoppel § 176.
[5-8] 30 Am Jur, Judgments § 248 *et seq.*

5. PRINCIPAL AND AGENT—RES JUDICATA.
   The determination of the issue in a suit against the principal bars
   an action against the agent on the same cause of action.

6. JUDGMENT—RES JUDICATA—PRINCIPAL AND AGENT.
   The unilateral character of the estoppel of an adjudication
   against a plaintiff in his action against a principal is justified
   by the injustice which would result in allowing a recovery
   against a defendant for the conduct of another, when that
   other has been exonerated in a direct suit and such rule is
   applied where the relation between the defendants in the 2
   suits is that of principal and agent, master and servant, or
   indemnitor and indemnitee.

7. SAME—FEDERAL COURT—BANKRUPTCY—WAIVER—BLUE SKY LAW.
   The Federal court's finding of waiver on part of purchasers of
   unvalidated stock of bankrupt corporation constitutes *res judi-
   cata* against president and agent of the corporation in the sale
   of the stock in action against him wherein such defense was
   interposed by amended answer after final determination in
   Federal court, it being unnecessary that there be a mutuality
   in the application of *res judicata* under the circumstances
   (CL 1948, § 451.120).

8. SAME—RES JUDICATA—BANKRUPTCY OF CORPORATION—ACTION
   AGAINST PRESIDENT.
   Plaintiffs, husband and wife, in action against president and
   agent of corporation for sale to them of unvalidated stock,
   who had full opportunity to present same issues in bankruptcy
   proceeding of corporation and assert none was presented that
   is unavailable to defendant herein, were barred by adjudication
   had in bankruptcy proceeding (CL 1948, § 451.120).

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted January 13, 1954. (Docket No. 40, Cal-
endar No. 45,690.) Decided February 18, 1954.

Case by Katherine DePolo and Bruno DePolo
against William R. Greig for damages arising from
sale of corporate stock. Judgment for defendant.
Plaintiffs appeal. Affirmed.

*Fildew, Degree & Fleming,* for plaintiffs.

*Armstrong, Essery, Helm & Marshall,* for defend-
ant.

Butzel, C. J. Bruno and Katherine DePolo brought suit against William R. Greig to recover the sum of $40,000, the purchase price of 40,000 shares of common stock of the Spline & Gear Machine Company, Inc., a Michigan corporation. The stock had never been validated for sale under the blue sky law, PA 1923, No 220, as amended (CL 1948, § 451.101 *et seq.* [Stat Ann § 19.741 *et seq.*]). Defendant was the president and agent of the corporation in making such sale and as such would be jointly and severally liable under the statute, CL 1948, § 451.120 (Stat Ann § 19.760).

Mr. DePolo was associated with a successful concern that manufactured screw-machine products, bolts and nuts. He drew a large salary from this concern and, over a period of 20 years, had invested a considerable amount in the stock market. He became interested in Mr. Greig, the defendant, and the Spline & Gear Machine Company, Inc., through a mutual friend and decided to make an original investment of $20,000 in the stock of that corporation. He admitted that he was told and knew that the corporate statement showed a deficit of $37,000 but he nevertheless was willing to invest in the corporation. DePolo also admitted that he was introduced to a member of the firm of accountants that prepared the corporation's accounts and that he had the opportunity to discuss the corporation's financial condition. At the time of the purchase he was told that the stock had never been validated. Testimony in behalf of the defendant showed that DePolo did not care to have the stock validated and that the attorney for the corporation expressed doubts as to whether the stock would be accepted for filing by the Michigan corporation and securities commission because of the large deficit. Whether it would have been accepted for filing for limited purposes is not before us. The corporation's attorney told DePolo

that in order to avoid the severe penalty under the statute he would have to sign a waiver that was prepared and which stated, in substance, that the stock had not been accepted for filing by the Michigan corporation and securities commission and was not exempt from the Michigan blue sky law, and that DePolo, having knowledge of such facts, had refused the voluntary offer of the officers of the corporation to take back the shares and to accept a refund of the full amount of the purchase price; and, further, that he waived all rights and benefits that he might otherwise have been entitled to under section 20 of the Michigan blue sky law (CL 1948, § 451.120 [Stat Ann § 19.760]) with respect to sales in violation thereof and that he released the corporation and its officers of any and all liability in connection therewith. DePolo not only signed the instrument but also swore to it before a notary public. The sale was made on or about the 26th of December, 1947. When the stock was issued in DePolo's name he asked that his wife's name be added to the stock certificate as a joint owner. About 2 weeks later DePolo bought, as a joint owner with his wife, an additional $20,000 worth of the shares and executed a similar waiver of purchaser's rights under the blue sky law. The stock in all cost him $40,000. He and defendant became friends; he joined the golf club of which defendant was a member; he paid his own membership fee but the corporation paid the tax on the fee as well as from $700 to $900 for his expenses at the club. The corporation also paid the cost of sending plaintiffs' children to a summer camp.

Plaintiff testified that he was never active in the corporation and went there about once a month but there is testimony that he visited the place at least once a week. Some 6 months after he purchased the stock he was elected director and vice-president. He claims that he did nothing in that capacity. Evi-

dently the directors' meetings were informal, the corporation being one with a limited number of stockholders. Notwithstanding DePolo's testimony to the contrary, it appears that he did often counsel with defendant and others in regard to orders, methods of manufacturing, production costs and labor. He was more than a passive stockholder who had made an investment without participating in the management in any way. He claims that he did not receive regular reports but this is denied. He was never refused access to the financial reports that were available. We find no evidence of fraud in inducing the purchase of the stock or thereafter. The corporation did make some profit for a short period after DePolo became interested but there were further losses and particularly so on a contract made with Montgomery Ward & Company, where there was a loss of over $100,000 on the order. This was more than the corporation could stand and it went into bankruptcy. DePolo resigned from the corporation as director and vice-president in March, 1949. When the corporation was in difficulties he and his wife tendered back the stock and demanded refund of the purchase price, which was refused.

DePolo and his wife brought suit in the Wayne county circuit court on July 5, 1949, against the corporation and Greig as defendants. On October 13, 1949, plaintiff filed a claim for $40,000 against the corporation in the United States District Court for the Eastern District of Michigan, Southern Division, in the bankruptcy matter that was pending. Evidently, as appears from the opinion of the referee in bankruptcy, the identical claims under the blue sky law, including the question of whether plaintiff was agent of his wife were presented and carefully considered by both the referee and the district judge who in a written opinion affirmed the referee's ruling disallowing plaintiffs' claim. On January 5, 1951,

plaintiffs moved to strike defendant's answer to their amended declaration in regard to the reference to the pending bankruptcy proceedings wherein the corporation asked for a plan of arrangement under chapter 11 of the Federal bankruptcy act. The motion set forth that such plan had been withdrawn; that the corporation had been adjudicated a bankrupt and that there had been a stipulation and order discontinuing the case against the corporation in the circuit court. The circuit judge granted such motion but gave defendant 10 days in which to file a new answer. Six months later, after there had been a motion to dismiss on the part of defendant on answer filed therein, the court permitted defendant to amend his answer to show the proceedings in the United States District Court and permitting the defense of *res judicata* which applied to the controversy in the instant case. We find no error in permitting such amendment as theretofore there had not been a final judgment in the United States District Court. The judge did not abuse his discretion.

It is claimed, in the first place, that the waiver signed by DePolo is of no force and effect; that it was a method of vitiating and emasculating the force of the blue sky law, *supra,* and that if it were of any legal effect it could be resorted to by everyone to avoid the provisions of the blue sky law. We realize the force of this argument but there is testimony that DePolo agreed that no steps be taken to validate the issuance of the stock and, further, with the knowledge that the stock had not been validated, he made a second purchase within 14 days after the first purchase. We believe that the signing of the instruments when considered with his subsequent conduct establishes an estoppel. See *Schrier* v. *B & B Oil Co.,* 311 Mich 118, and *Moore* v. *Manufacturers Sales Co.,* 335 Mich 606. DePolo was not

merely a purchaser of stock but he took an active interest in the corporation even though he did not participate to the degree that the purchasers of stock did in the *Schrier* and *Moore Cases, supra.* He waited until after the huge loss had been incurred on the Montgomery Ward contract and then first offered to surrender his stock and demanded his money back.

It is claimed, however, that even if DePolo's actions would estop him, they would not bind Mrs. DePolo whose name at DePolo's request had been entered on the stock certificates as a joint owner. According to her own testimony he was her agent at all times and was acting as her agent with her full authority and she is estopped by the acts of her agent.

Even if, however, there were any doubt about the question of estoppel, there is a further reason why plaintiffs cannot recover and on which the trial judge largely based his decision. Plaintiffs presented their claims in the bankruptcy court. From an adverse ruling by the referee in bankruptcy they appealed to the United States District Court for the Eastern District of Michigan, where the district judge reviewed the entire proceedings and held against the claim of plaintiffs. Defendant was active in the defense of the claim; the corporation was his principal. The ruling by that court established that there was no liability on the part of the corporation for whom the defendant, as officer and agent, acted. The present case is controlled by that of *Krolik* v. *Curry,* 148 Mich 214, where we said (p 222):

"Where a litigant has chosen to proceed against the agents of a corporation for misconduct on their part and has been defeated, he is thereby barred from litigating the same cause of action against the principal. *Emma Silver Mining Co. (Limited)* v. *Emma Silver Mining Co. of New York,* 7 F 401.

It follows that a determination of the issue in a suit brought against the principal bars an action against the agents. *Emery* v. *Fowler,* 39 Me 326 (63 Am Dec 627)."

Plaintiffs claim that the case against the corporation is against a different party; that there is a lack of mutuality and that it is not binding upon plaintiffs in the suit against the agent.

In a technical sense, the claim now asserted by plaintiffs against defendant is to be distinguished from that alleged as the basis of the claim in the bankruptcy proceedings. That claim was based upon a cause of action against the corporation. The present action is based upon the joint and several liability of the defendant as the corporation agent under the statute, CL 1948, § 451.120 (Stat Ann § 19.760). Plaintiff alleges that since the present defendant would not have been bound by a decision in the Federal court, not being a party to that action, plaintiff cannot now be bound by the decision against him; that is, the doctrine of *res judicata* must be applied only where there is mutuality.

The asserted necessity of mutuality in the application of *res judicata* has been the subject of extensive writing by legal commentators. See 65 Harv L Rev 818, 862; 64 Harv L Rev 509; 47 Mich L Rev 860; 35 Yale LJ 607; 91 U of Pa L Rev 467; 36 Va L Rev 963; 9 Va L Reg NS 241; 29 Ill L Rev 93; 18 NYULQR 565. Among the leading cases involving this issue are *Bernhard* v. *Bank of America National Trust & Savings Association,* 19 Cal2d 807 (122 P2d 892); *Coca Cola Company* v. *Pepsi-Cola Company,* 36 Del 124 (172 A 260); *Bigelow* v. *Old Dominion Copper Mining & Smelting Co.,* 225 US 111 (32 S Ct 641, 56 L ed 1009); *Good Health Dairy Products Corporation of Rochester* v. *Emery,* 275 NY 14 (9 NE2d 758, 112 ALR 401).

Plaintiffs in their brief admit that an exception to the requirement of mutuality exists where the liability of the defendant is entirely dependent upon the culpability of one exonerated in a prior suit. This exception is recognized in the case cited by the plaintiffs, *Bigelow* v. *Old Dominion Copper Mining & Smelting Co., supra.* As stated in that case (p 128):

"The unilateral character of the estoppel of an adjudication in such cases is justified by the injustice which would result in allowing a recovery against a defendant for conduct of another, when that other has been exonerated in a direct suit. The cases in which it has been enforced are cases where the relation between the defendants in the 2 suits has been that of principal and agent, master and servant, or indemnitor and indemnitee."

But conversely the rule applies where the principal has been exonerated in a prior suit which determined that the agent had committed no actionable wrong. In the present case the fact that the corporation and the defendant as its agents are, hypothetically, jointly and severally liable under the statute, does not remove the basis of the corporation's liability. The decision of the Federal court was based upon the finding that the plaintiffs had waived their rights under the statute. The finding of such a waiver was an adjudication of plaintiffs' rights against the corporation and constitutes *res judicata* against the present defendant who was acting as an agent of the corporation.

Aside from the principle of mutuality, plaintiffs have asserted no reasons why collateral estoppel should not be applied as barring their action against the present defendant. Defendant as president and principal stockholder of the corporation was a stranger to the bankruptcy proceedings in only the strictest sense of the term. Plaintiffs had full op-

portunity to present the same issues now presented against the defendant. They assert no defense available to the corporation that is unavailable to the defendant. The only inequity asserted by the plaintiffs is the denial of the opportunity to relitigate those same issues.

We are cognizant of the fact that plaintiff had no opportunity to select the forum for the original litigation of these issues. But, see *Maryland Casualty Co.* v. *United States,* 32 F Supp 746, and *Loughran* v. *Reynolds,* 70 Cal App2d 241 (160 P2d 904), where the denial of a claim in bankruptcy proceedings was held to be *res judicata* in a subsequent action involving the previously determined issues. Also, *Forest City Steel & Iron Co.* v. *Detroit & Toledo Shore Line Railroad Co.,* 154 Mich 182.

In *Walz* v. *Reliance Insurance Co. of Philadelphia,* 221 Mich 345, this Court indicated that the application of *res judicata* necessitated mutuality. At page 348, we stated:

"As the estoppel must be mutual, suppose that the judgment in the *Peninsular Case*\* had been adverse to plaintiffs, on this state of facts would it have been conclusive in all the cases? Surely not. Neither is the judgment conclusive as to defendant here."

In that particular case, plaintiffs were attempting to use affirmatively a judgment in a previous case as conclusive evidence of the liability of defendant. Such an application would have had the effect of depriving the defendant of a right to defend the case in court since the defendant had not been a party, or in privity with or an agent of the defendant in the previous suit.

---

\* A companion case. *Walz* v. *Peninsular Fire Ins. Co.,* 221 Mich 326.—Reporter.

In *Clark* v. *Naufel,* 328 Mich 249, this Court refused to permit defendant in a second suit to set up collateral estoppel against a plaintiff who, as defendant in a prior suit, had been found liable, even though the result of the first suit must have been based upon the negligence of the defendant in that case; that case did not involve the aspect of corporation and agent liability as in the present case.

We believe that the present case falls squarely within the rule of *Krolik* v. *Curry, supra,* and that plaintiffs are bound by the decision against them in the Federal court.

Judgment is affirmed, with costs.

Carr, Bushnell, Sharpe, Boyles, Reid, Dethmers, and Kelly, JJ., concurred.