SCHIMMER v WOLVERINE INSURANCE COMPANY

1. LIMITATION OF ACTIONS—NEGLIGENCE.

The statute of limitations for an action in tort begins to run at the time the claim accrues and therefore a claim of negligence on the part of an insurance agent in giving plaintiff bad advice in 1962 was barred in an action commenced in 1971 on the theory of tort (MCLA 600.5805).

2. LIMITATION OF ACTIONS—PRIOR JUDGMENT—PRINCIPAL AND AGENT.

A plaintiff cannot maintain an action against an insurance company for the negligence of its agent where a judgment has been rendered in favor of the agent, which determined that the applicable statutes of limitations had run, and that judgment has not been appealed from; a plaintiff who has chosen to proceed against an agent for misconduct and has been defeated is barred from litigating the same cause of action against the principal.

3. LIMITATION OF ACTIONS—CONTRACTS.

A plaintiff who brought an action alleging a breach of contract by a defendant insurance company's refusal to defend claims brought against the plaintiff could not maintain the action where it was commenced more than six years after the breach alleged (MCLA 600.5807).

4. JUDGMENT—ACCELERATED JUDGMENT—SUMMARY JUDGMENT.

The Court of Appeals can give any judgment and make any order which should have been given or made in the trial court; therefore, a defendant's motion for accelerated judgment may be treated as one for summary judgment where the plaintiff failed to state a claim upon which relief could be granted and summary judgment was proper (GCR 1963, 116, 117, 820.1).

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur 2d, Limitation of Actions § 59.
[2] 51 Am Jur 2d, Limitation of Actions § 301 *et seq.*
[3] 51 Am Jur 2d, Limitation of Actions §§ 1, 64, 65.
[4] 73 Am Jur 2d, Summary Judgment § 26.
[5] 61 Am Jur 2d, Pleading § 306.
[6] 43 Am Jur 2d, Insurance § 1575.

5. PLEADING—AMENDMENT—SUMMARY JUDGMENT—COURT RULES.

A plaintiff's motion to amend her pleadings, made after summary judgment was entered against her, to plead estoppel of defendant insurance companies to raise exclusionary coverage defenses was properly denied where the defendants were not asserting exclusionary clauses, but rather that no coverage existed (GCR 1963, 117.3, 118.1).

6. INSURANCE—DEFENSE OF INSURED—DUTY TO DEFEND—INSURED PREMISES.

An insurer had no duty to defend an insured in an action for damages resulting from the asphyxiation and injury of the occupants of a dwelling owned by the insured but not specifically covered by the policy where the insurer's duty to defend was stated in the policy to be in any suit against the insured alleging bodily injury or property damage and seeking damages payable under the terms of the policy.

Appeal from Saginaw, Joseph R. McDonald, J. Submitted Division 3 June 10, 1974, at Lansing. (Docket No. 15585.) Decided July 22, 1974.

Complaint by Freida Schimmer against the Wolverine Insurance Company and the Camden Fire Insurance Association seeking recovery of attorney fees and damages. Judgment for defendants. Plaintiff appeals. Affirmed.

*Gilbert, Eaton & Leak,* for plaintiff.

*Isackson & Neering, P. C.,* for defendant Wolverine Insurance Company.

*Ransom & Henneke, P. C.,* for defendant Camden Fire Insurance Association.

Before: QUINN, P. J. and V. J. BRENNAN and CARLAND,* JJ.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

CARLAND, J. On October 30, 1959, C. A. Raymond, the operator of a general insurance agency in the City of Saginaw, insured plaintiff's residence at 1006 Brockway in such city under a standard owner's, landlord's and tenant's liability policy with the defendant Wolverine Insurance Company (hereinafter referred to as Wolverine). By an endorsement to this same policy, a rental property owned by the plaintiff and located at 1016 Brockway was also insured. Each renewal of this policy up to October 30, 1962 specifically covered both the residence and the rental property. On July 16, 1962, the rental property at 1016 Brockway was sold by plaintiff to Daniel and Joyclyn Cox on land contract. When this policy was renewed on October 30, 1962, 1016 Brockway was specifically deleted from the policy declarations, leaving only 1006 Brockway covered by the policy. It is plaintiff's contention that this deletion was made despite her specific request to Raymond that the coverage be continued, even though Raymond had advised that she no longer needed the coverage. The policy covering only 1006 Brockway was again renewed in October of 1963 and for several years thereafter.

On October 31, 1962, Camden Fire Insurance Association (hereinafter referred to as Camden) issued to plaintiff homeowner's insurance policy no. H68-17-41 containing along with other coverage comprehensive personal liability coverage under section II of its policy. This policy was for a term of three years and the only premises described therein were 1006 Brockway.

Plaintiff also had a homeowner's policy of insurance in effect with State Farm Fire & Casualty Company covering the 1016 Brockway property. The policy had been issued to Cox and wife, the

land contract purchasers, with plaintiff being named as an additional insured.

On November 6, 1963, Daniel F. Cox and his daughter were allegedly asphyxiated at 1016 Brockway and Joyclyn Cox was allegedly injured. Following this incident, a series of lawsuits was started against the plaintiff and others. Plaintiff was first served with process in connection with these actions on February 6, 1964. Subsequently thereto Wolverine, Camden and State Farm were requested by plaintiff to defend these actions under the terms of their policies. This they declined to do. Plaintiff eventually succeeded in having the action dismissed as to her.

On January 14, 1971, plaintiff instituted the present action against Wolverine, Camden, State Farm and C. A. Raymond seeking to recover the attorney fees incurred by her in defense of the actions against her and also seeking to recover special damages for mental and physical suffering arising as the result of the defendants' breach of contract. The action is no longer pending against Raymond or State Farm.

On May 1, 1972, the trial court granted an accelerated judgment in favor of Wolverine upon a finding that plaintiff had no coverage under her contract of insurance with Wolverine "with respect to the alleged accident or casualty at 1016 Brockway, and there was no obligation on the part of defendant insurance company to defend plaintiff under the terms of said policy. Plaintiff has failed to state a claim upon which relief can be granted."

Likewise, on May 1, 1972, summary judgment was rendered in favor of Camden under a finding by the trial court that "under the terms of the applicable insurance policy * * * no coverage was afforded to the plaintiff by her contract of insur-

ance with defendant Camden Fire Insurance Association with respect to the alleged accident or casualty at 1016 Brockway, and there was no obligation * * * to defend plaintiff under the terms of said policy". From these two judgments, plaintiff appeals.

It is first claimed by appellant that the trial court erred in granting Wolverine's motion for accelerated judgment. Plaintiff's claim that she was taken by surprise by the trial court's action in granting the defendant's motion on the basis that plaintiff had failed to state a cause of action is without merit. The record discloses that the motion was argued and briefed by the defendant both on the statute of limitation question and the issue of whether the insurance policy covered the casualty involved. Having disposed of the motion on the failure of plaintiff to state a cause of action, the trial court found no necessity to decide the statute of limitation question. Plaintiff was neither surprised nor prejudiced thereby.

The facts are not in dispute. When the policy came up for renewal in October 1962, 1016 Brockway which had previously been covered by the policy was specifically deleted therefrom. It was again renewed in 1963 without mention of the address at 1016. Plaintiff requested Wolverine to defend these actions started against her and by letter dated May 7, 1964, Wolverine refused the request and denied coverage under the policy. This action was commenced January 14, 1971.

Plaintiff sued Wolverine on both a tort and contract theory. Under either theory plaintiff's action is barred by the statute of limitations.

Plaintiff's theory on tort arises from the claimed negligence of Wolverine's agent, C. A. Raymond, in giving her bad advice at the time of renewal on

October 30, 1962. MCLA 600.5827; MSA 27A.5827 provides that the statute of limitations begins to run at the time the claim accrues.

"Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."

Further, MCLA 600.5805; MSA 27A.5805 provides that the period of limitations is three years for injuries to persons or property.

There further appears to be a most cogent reason why plaintiff cannot prevail against Wolverine under the claim here made. By its order of May 1, 1972 granting an accelerated judgment in favor of C. A. Raymond, the alleged agent of Wolverine, the trial court determined that both the three-year and the six-year statute had run on any claim against the agent. This judgment has not been appealed from and still stands. It would indeed be strange if a principal could be held liable for the acts of its agent where, by judicial determination, the agent has been found not to be liable for these same acts. This determination would seem to estop the plaintiff from further action against Wolverine.

In *DePolo v Greig,* 338 Mich 703; 62 NW2d 441 (1954), the Supreme Court held on page 709 as follows:

"The present case is controlled by that of *Krolik v Curry* 148 Mich 214; 111 NW 761 (1907), where we said (page 222):

" 'Where a litigant has chosen to proceed against the agents of a corporation for misconduct on their part and has been defeated, he is thereby barred from liti-

gating the same cause of action against the principal. *Emma Silver Mining Co (Limited) v Emma Silver Mining Co of New York*, 7 F 401 (CA 2, 1880). It follows that a determination of the issue in a suit brought against the principal bars an action against the agents. *Emery v Fowler*, 39 Me 326; 63 Am Dec 627 (1855).' "

Further, the Court quoted with approval from page 128 of *Bigelow v Old Dominion Copper Mining & Smelting Co*, 225 US 111; 32 S Ct 641; 56 L Ed 1009 (1912), the following:

" 'The unilateral character of the estoppel of an adjudication in such cases is justified by the injustice which would result in allowing a recovery against a defendant for conduct of another, when that other has been exonerated in a direct suit. The cases in which it has been enforced are cases where the relation between the defendants in the two suits has been that of principal and agent, master and servant, or indemnitor and indemnitee.' " 338 Mich 711; 62 NW2d 444.

Under the contract theory, plaintiff had, from the date of the breach, a period of six years in which to bring the action, MCLA 600.5807(8); MSA 27A.5807(8). Assuming the insurance to be in force, Wolverine's breach occurred on May 7, 1964 when it refused to defend the actions brought against plaintiff. The statute of limitations ran on May 7, 1970, some six months prior to the commencement of the case at bar. Therefore, even under plaintiff's contract theory, the action is barred.

The dispute between the parties raises the issue of whether the trial court could properly grant Wolverine's motion for accelerated judgment on summary judgment grounds. However, this issue need not be decided. Under GCR 1963, 820.1(7), the Court of Appeals can give any judgment and make

any order which ought to have been given or made in the trial court. Therefore, since plaintiff's action is barred by the statute of limitations, the court ·may properly grant Wolverine's motion for accelerated judgment based on the grounds that plaintiff's action is barred by the statute of limitations. Further, the court may treat Wolverine's motion for accelerated judgment as one for summary judgment according to *Sims v United Papermakers & Paperworkers AFL-CIO,* 26 Mich App 129; 182 NW2d 90 (1970). The terms of the insurance policy clearly show that at the time of the casualty 1016 Brockway had been deleted from the Wolverine policy. Therefore, plaintiff failed to state a claim upon which relief could be granted and a summary judgment is proper.

It is next argued by plaintiff that the trial court erred in refusing to permit plaintiff to amend her pleadings under GCR 1963, 117.3 to allege that defendants were estopped from raising exclusionary coverage defenses. Although we find this issue to be properly before this Court by reason of the resulting waiver by Camden following its failure to comply with GCR 1963, 804.2, we discern no merit in plaintiff's contention.

Plaintiff sought to amend her pleadings pursuant to GCR 1963, 117.3 which reads in part:

"Each party shall be given opportunity to amend his pleadings as provided by Rule 118 unless the evidence then before the court shows amendment would not be justified."

Further, since plaintiff's motion to amend was made after summary judgment was entered against her, she could only amend her pleadings by leave of the court. 1 Honigman & Hawkins,

Michigan Court Rules Annotated (2d Ed), pp 413–414.

Plaintiff relies on only one Michigan case to support her claim of estoppel, *Meirthew v Last,* 376 Mich 33; 135 NW2d 353 (1965). In *Meirthew* the insurance company, acknowledging the existence of an insurance contract on the subject matter of the suit, undertook to defend the insured's lawsuit under a reservation of rights. The court held that the insurance company was estopped, after it lost the lawsuit, to assert exclusionary provisions of the insurance policy in order to disclaim liability. The court found that the insured was prejudiced by the failure of the insurance company to give reasonable notice of the exclusionary clause.

The doctrine of estoppel urged by plaintiff is not applicable to the situation presented in this case. This is not a case where the defendant insurance companies assert exclusionary clauses in the insurance contracts in order to disclaim liability. Rather, the insurance companies' position was that no policy coverage existed. Therefore, the court properly denied plaintiff's motion to amend her pleadings since the evidence before the court showed that the amendment would not be justified.

The final question raised by plaintiff is whether the trial court erred in granting Camden's motion for summary judgment. In deciding this question, we must bear in mind the policy here involved and that the policy was in force on the date of the occurrence of the casualty leading to the litigation. The policy provided for comprehensive personal liability insurance under section II.

The plaintiff maintains that the policy was in effect two policies. One policy insured against certain risks such as fire or windstorm occurring at or

in connection with 1006 Brockway. It is conceded by plaintiff that 1016 Brockway was not listed in the Camden policy as being insured premises. The other policy as claimed by plaintiff afforded to plaintiff the right to be defended by Camden in any personal action no matter where the casualty occurred.

Since it is conceded that 1016 Brockway is not an insured premise, the sole question remaining is whether Camden under the terms of the policy is bound to defend an action arising out of a casualty occurring at that address on November 6, 1963. Because of her concession as to the location of the premises described in the policy, plaintiff is here maintaining that the liability to defend attaches whether the casualty occurred at 1016 Brockway or elsewhere. She says that this liability attaches from the mere fact of the occurrence of a casualty for which she is sued.

Camden on the other hand maintains that its only obligation to defend arises when the casualty occurs at the insured premises.

The trial court in granting the motion based its decision on the terms of the policy. Although the plaintiff alleged the terms to be ambiguous, thus creating factual questions, the court found that there was no question of fact to be decided. We are thus faced with the necessity of deciding whether the trial court properly interpreted section II of the policy, which provision reads as follows:

"1. COVERAGE E—COMPREHENSIVE PERSONAL LIABILITY: (a) Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the company shall defend any suit against the insured alleging such bodily injury or

property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

Both parties rely on *Zurich Insurance Co v Rombough,* 384 Mich 228; 180 NW2d 775 (1970), which simply held the policy in issue to be sufficiently ambiguous to require the company to defend. There the plaintiff was relying, as was the defendant in *City Poultry & Egg Company v Hawkeye Casualty Co,* 297 Mich 509; 298 NW 114 (1941), upon certain exclusionary clauses in the policy. The insurers were claiming in effect that, since they were not liable to pay the damages which might be assessed against their assured, no obligation to defend existed. In these cases, the policies provided that the insurer would defend any action against the insured seeking damages even if the action be groundless, false or fraudulent. In *Hawkeye, supra,* the Court found the obligation to defend to be clear and unequivocal, saying on page 512 as follows:

"The obligation to defend suits alleging injuries, sustained by persons, caused by accident and arising out of the use of the automobile, is clear and unequivocal. The insurance company could have limited its obligation to the defense of suits where, on the facts, the insurance company was liable to the insured in case of judgment. That, however, is not this case. Here, the undertaking to defend is absolute."

This language was quoted with approval in *Zurich, supra,* and the conclusion followed that any ambiguity must be construed against the insurer.

In the case at bar, Camden is not defending on some exclusionary clause but is maintaining that the policy itself does not require it to defend with

respect to any accident or casualty occurring at 1016 Brockway. Here Camden, unlike the insurers in *Zurich* or *Hawkeye,* limited its liability to defend through the use of the following language:

"and the company shall defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy."

We also note the following language on page 234 of *Zurich, supra:*

"Our decision does not extend the insurer's duty to defend without limits. The duty extends only to the defense of actions of the nature and kind covered by the policy."

In *State Mutual Cyclone Insurance Co v Abbott,* 52 Mich App 103; 216 NW2d 606 (1974), the Court in interpreting the precise language contained in the policy in the instant case concluded that by the use of such language the insurer did not have a duty to defend. With this we concur and find that Camden had only the obligation to defend in actions arising out of incidents occurring upon the insured premises located at 1006 Brockway.

The decision of the trial court is hereby affirmed on all issues raised by this appeal.

All concurred.