772 F.2d 907
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MITSUBISHI AIRCRAFT INTERNATIONAL, INC., PLAINTIFF-APPELLANT,
v.
DUKAY AIR LIMITED; A MICHIGAN CORPORATION, AND VICTOR R.
DUKAY, DEFENDANTS-APPELLEES.
 NO. 84-1551
 United States Court of Appeals, Sixth Circuit.
 8/15/85
 
 E.D.Mich.
 AFFIRMED
 On Appeal from the United States District Court for the Eastern District of Michigan
 Before: KENNEDY and KPUPANSKY, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Mitsubishi Aircraft International, Inc. (Mitsubishi) appeals from the judgment of the District Court dismissing its claims against defendants Dukay Air Limited (DAL) and Victor Dukay (Dukay). Mitsubishi's complaint alleged that Victor Dukay, individually, and DAL had each violated the Robinson-Patman Act, 15 U.S.C. Sec. 13(c), by simultaneously representing Mitsubishi's interests as a seller and Scott Brady's interest as a buyer in the sale of an airplane, and that each had breached a fiduciary duty owed to Mitsubishi.
 
 
 2
 On August 20, 1982, Mitsubishi and DAL entered into a contract under which Mitsubishi agreed to pay DAL 'for services rendered in conjunction with syndicating and administering the purchase or purchase/lease back' of the Mitsubishi 'Diamond I' airplane. DAL's services were to include locating and introducing to Mitsubishi a purchaser for the Diamond I, and then to conduct all negotiations between Mitsubishi and the purchaser.
 
 
 3
 In anticipation of this agreement, DAL had been actively seeking, and had found, a purchaser. Thus, DAL immediately introduced Mitsubishi to Brady. Brady signed a Mitsubishi Diamond I purchase agreement on August 20, 1982 and Mitsubishi countersigned the agreement on September 1, 1982. Mitsubishi was to provide ten-year financing. Subsequent to the signing of the purchase agreement, a review of Brady's credit apparently disheartened Mitsubishi and the company announced that the sale would not be closed unless different financing arrangements were made.
 
 
 4
 DAL and Brady then filed suit for specific performance in a Michigan state court. On September 20, 1982, the state court issued an order temporarily restraining Mitsubishi from selling the airplane to anyone other than Brady.
 
 
 5
 On September 29, 1982, the deal was closed. It was agreed that, as a down payment, Brady would pay $250,000 in cash and DAL would reduce the cash payment of its commission from Mitsubishi--$238,608--by $50,000. In return for this financial assistance, DAL received stock in, and Dukay became an officer of, Diamond I, Inc., a purchasing corporation established to help Brady purchase the plane. Mitsubishi proceeded to seek a buyer for the ten-year, $1.968 million note delivered by Brady. On June 14, 1983, Mitsubishi found a buyer for the note and an assignment of it was made. Brady then dropped his state claims against Mitsubishi.
 
 
 6
 In the meantime, DAL had vainly attempted to recover its fee from Mitsubishi. When Mitsubishi failed to pay, DAL filed a supplemental complaint in its state court action, seeking payment of the fee.
 
 
 7
 In the state court, the trial judge instructed the jury as follows:
 
 
 8
 If you find by a preponderance of the evidence that Dukay Air Limited was acting as agent for the purchaser of this jet, or was acting on behalf of the purchaser, or was subject to the purchaser's direct or indirect control, then I instruct you to render a verdict for the defendant.
 
 
 9
 On December 1, 1983, the jury rendered a verdict in favor of DAL for $260,000. This recovery was offset by a $50,000 verdict for Mitsubishi on its counterclaim involving DAL's contribution to the $300,000 down payment. Accordingly, a state court judgment was entered December 7, 1983.
 
 
 10
 On April 17, 1984, the District Court, ruling from the bench, dismissed Mitsubishi's claims on the ground that Mitsubishi was estopped from relitigating the facts determined in state court and that those facts precluded Mitsubishi from recovering on any of its federal claims. Mitsubishi appeals, arguing that collateral estoppel is inappropriately applied in this case because there is no identity of parties, insofar as the claims are against Dukay as an individual, and, further, because exclusive federal jurisdiction over antitrust claims bars the use of state court determinations as collateral estoppel in a federal antitrust suit.
 
 
 11
 We affirm the District Court's judgment. We must apply the preclusion principles that the state court would apply if this issue had come up in state court. See Migra v. Warren City School Bd. of Educ., 104 S. Ct. 892 (1984). Michigan adheres to traditional collateral estoppel doctrine. When two parties litigate an issue in a Michigan court and that issue is a necessary component of the court's decision, the issue is permanently resolved and may not be relitigated between the parties or their privies in any subsequent case. See Senior Accountants v. City of Detroit, 399 Mich. 449, 458 (1976); Howell v. Vito's Trucking & Excavating Co., 386 Mich. 37, 41-42 (1971); Darin & Armstrong v. Ben Agree Co., 88 Mich. App. 128, 134 (1979).
 
 
 12
 Given the jury instructions, the jury verdict in favor of DAL establishes that the jury concluded that DAL did not act as an agent for Brady, did not act on behalf of Brady, and was not subject to Brady's direct or indirect control. Yet in order to establish DAL's liability on any of the claims in the present case, Mitsubishi must prove one of those three things. Since Mitsubishi cannot relitigate those issues, the claims against DAL were correctly dismissed.
 
 
 13
 Mitsubishi argues that since Dukay personally was not a party to the state action, he cannot now take advantage of any estoppel effect. Mitsubishi, however, has not alleged any facts supporting an inference that it ever had any relationship with Dukay personally. We are apparently asked to view Dukay as inseparable from DAL for purposes of DAL's agreement with Mitsubishi, but as readily divisible from DAL for purposes of the estoppel effect of the state court proceedings. Mitsubishi cannot have it both ways.
 
 
 14
 Further, Michigan recognizes an exception to the rule requiring identity of parties for collateral estoppel, where a master-servant or principal-agent relationship exists. See DePolo v. Greig, 338 Mich. 703, 709-13 (1954) (finding of no liability on part of corporation precluded subsequent attempt to establish liability of agent); Krolik v. Curry, 148 Mich. 214, 222 (1907) ('Where a litigant has chosen to proceed against the agents of a corporation for misconduct on their part and has been defeated, he is thereby barred from litigating the same cause of action against the principal. It follows that a determination of the issue in a suit brought against the principal bars an action against the agents') (citations omitted). Judging from the record, DAL acted solely through Dukay. If DAL had acted unlawfully, it would have been through Dukay, and if Dukay had acted unlawfully, the state jury would have attributed such wrongdoing to DAL. The principal-agent exception applies here, enabling Dukay individually to take advantage of the estoppel effect of the state judgment.
 
 
 15
 Mitsubishi next argues that state court determinations do not have collateral estoppel effect in subsequent federal court antitrust proceedings because of the exclusive federal jurisdiction over antitrust cases. As authority, Mitsubishi cites cases which do not support its position. See Kurek v. Pleasure Driveway & Park District, 583 F.2d 378 (7th Cir. 1978), cert. denied, 439 U.S. 1090 (1979) (estoppel effect on a federal claim of a prior state judgment can only be decided by the federal court before which the claim is litigated); Overseas Motors, Inc. v. Import Motors Limited, Inc. 375 F. Supp. 499, 522 (E.D. Mich. 1974), aff'd, 519 F.2d 119 (6th Cir.), cert. denied, 423 U.S. 987 (1975) (where prior state decision is not intimately and inextricably bound up with the central issues in the antitrust case, but merely determines matters of fact and law which are incidental to the antitrust claim, prior adjudication should be accorded preclusive effect). Finally, one case Mitsubishi cites directly contradicts Mitsubishi's position by stating:
 
 
 16
 The root of the doctrine is in the same soil as the principle . . . that federal antitrust suits may not be brought in state courts. And the doctrine has been held . . . to share the same rather anomalous exception that findings of fact--at least some findings of fact--made by a tribunal that lacks antitrust jurisdiction will nevertheless be given collateral estoppel effect in a subsequent antitrust suit between the parties.
 
 
 17
 University Life Insurance Co. v. Unimarc Ltd., 699 F.2d 846, 851 (7th Cir. 1983).
 
 
 18
 The factual issues determined by the state jury in the present case, while fatal to Mitsubishi's antitrust claims, required no antitrust expertise. The jury merely determined whether Dukay had any sort of agency relationship with Brady. This finding is entitled to full preclusive effect, and Mitsubishi, therefore, cannot establish a Robinson-Patman violation.
 
 
 19
 The judgment of the District Court is affirmed.