HOWELL *v.* VITO'S TRUCKING AND EXCAVATING COMPANY

OPINION OF THE COURT

1. JUDGMENT — ACTION — MERGER — BARRING ACTION — ISSUES — DEFAULT JUDGMENT.

A judgment in favor of the plaintiff merges the cause of action in the judgment and the plaintiff cannot thereafter maintain an action on the original cause of action; if a judgment is in favor of the defendant on the merits, the original cause of action is barred by the judgment; and in either case the original cause of action is extinguished by the judgment no matter what issues were raised and litigated in the action, or even if no issues were raised or litigated and judgment was by default.

2. JUDGMENT — COLLATERAL ESTOPPEL — ACTION — QUESTIONS LITIGATED.

The doctrine of collateral estoppel is that a judgment is conclusive between the parties to a subsequent action based upon

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judgments §§ 382 *et seq.,* 1197 *et seq.*
Doctrine of res judicata as applied to default judgments. 128 ALR 472, supp. 77 ALR2d 1410.
[2] 46 Am Jur 2d, Judgments §§ 397, 417 *et seq.*
[3] 46 Am Jur 2d, Judgments § 529 *et seq.*
[4] 46 Am Jur 2d, Judgments § 525.
Judgment for or against person in fiduciary capacity as res judicata for or against him in his individual or a different capacity, or vice versa. 170 ALR 1180.
[5] 46 Am Jur 2d, Judgments § 518 *et seq.*
Judgment in action growing out of accident as res judicata, as to negligence or contributory negligence, in later action growing out of same accident by or against one not a party to earlier action. 133 ALR 181, supp. 23 ALR2d 710.
[6, 8] 46 Am Jur 2d, Judgments §§ 521–523.
Mutuality of estoppel as prerequisite of availability of doctrine of collateral estoppel to a stranger to the judgment. 31 ALR3d 1044.
[7] 46 Am Jur 2d, Judgments § 601.
[9] 46 Am Jur 2d, Judgments § 419.

a different cause of action from that upon which the prior action was based as to questions actually litigated and determined by the judgment but the judgment is not conclusive as to questions which might have been but were not litigated in the original action.

3. AUTOMOBILES—ACTION—PARTIES—PRIVIES—SEPARATE ACTIONS—WRONGFUL DEATH.

Husband, suing as administrator of his wife's estate, as an individual, and as guardian of his minor son, was not a party or privy to a separate action by his daughter for damages for her injuries arising out of the same motor vehicle collision which caused his wife's death, the parties were separate legal entities and remain as legal strangers even though the husband and those he represented were interested in the outcome of the daughter's action, or were witnesses, or participated in a limited representative capacity for the benefit of one of the parties as he did not have the right to make defense, control the proceedings or appeal from a judgment which would have been adverse to the daughter's claim and this equally applies where the daughter appears in the case by the husband solely as an heir at law of her mother and bases her claim exclusively upon rights derived from the latter's wrongful death.

4. JUDGMENT—RES JUDICATA—ACTION—PARTIES.

A judgment for or against a person who brings an action or is sued in his individual right is not operative under the doctrine of *res judicata* in a subsequent action brought by or against the same person in a representative capacity; a judgment in an action in which one of the parties appears in a representative capacity is not operative under the doctrine of *res judicata* in a subsequent action involving the same party in his individual right; but these rules are not applicable where a party to one action in his individual capacity and to another action in his representative capacity is in each case asserting or protecting his individual rights.

5. AUTOMOBILES—JUDGMENT—RES JUDICATA—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—PARTIES.

Judgment for the plaintiff for damages for personal injuries arising from an automobile accident is not *res judicata*, or conclusive, as to issues of negligence or contributory negligence, in a subsequent action growing out of the same accident, by a different plaintiff against the same defendant.

6. AUTOMOBILES—JUDGMENT—RES JUDICATA—NEGLIGENCE—CONTRIB-
UTORY NEGLIGENCE—MUTUALITY.

  Assertion of *res judicata* would fail for want of mutuality and
    neither the plaintiff nor defendant are bound in a suit by a
    husband as administrator of his wife's estate as an individual
    and as guardian of his minor son to recover damages arising
    out of a motor vehicle collision which caused his wife's death,
    as it pertains to defendant's negligence or his wife's lack of
    contributory negligence, by the judgment in his daughter's
    separate successfully presented case for damages for her in-
    juries arising out of the same collision as both the litigants
    must be alike concluded by the judgment or it binds neither.

7. ESTOPPEL—DISCRETION.

  The application of estoppel should not be left to the discretion
    of the trial judge as the course of justice is best served by
    adherence to a long established and definitive rule which the
    bench and bar of Michigan well recognizes rather than permit
    an *ad hoc* formulation of a rule based on innumerable and
    unmanageable factors.

8. JUDGMENT—COLLATERAL ESTOPPEL—AUTOMOBILES—ACTION—PAR-
TIES—SEPARATE ACTIONS—MUTUALITY.

  Defendant is not collaterally estopped from defending against
    plaintiff's claim of negligence in an action by a husband as
    administrator of his wife's estate, as an individual, and as
    guardian of his minor son for damages arising out of a motor
    vehicle accident by a judgment against defendant in a sep-
    arate suit by plaintiff's daughter for damages for her injuries
    arising out of the same collision which caused the wife's death
    because mutuality is required to apply collateral estoppel.

CONCURRING OPINION

BLACK, J.

9. JUDGMENT—ESTOPPEL.

  *An estoppel by previous judgment cannot prevail where the spe-
    cific claim in question was actually excluded from judicial con-
    sideration in the first action.*

Appeal from Court of Appeals, Division 2, T. G. Kavanagh, Quinn and Miller, JJ., remanding Oakland, Arthur E. Moore, J. Submitted March 3, 1971. (No. 40 January Term 1971, Docket No. 52,679.) Decided November 9, 1971.

20 Mich App 140 reversed.

Complaint by William Howell, administrator of the estate of Hattie Howell, deceased, for himself and as guardian of James L. Howell, a minor, against Vito's Trucking and Excavating Company for damages for wrongful death and personal injuries resulting from a motor vehicle collision. Partial summary judgment for plaintiff. Plaintiff appealed and defendant cross-appealed to the Court of Appeals. Remanded. Plaintiff and defendant appeal. Reversed and remanded.

*Richard L. Wolk,* for plaintiff.

*Patterson & Patterson, Whitfield, Manikoff & White* (by *Robert G. Waddell*), for defendant.

T. M. KAVANAGH, C. J. We are asked to reconsider and clarify the doctrine of collateral estoppel by judgment, especially concerning the traditional requirement of mutuality.

Plaintiff's decedent, Hattie Howell, died of injuries received in a motor vehicle collision with defendant's truck. Other occupants of the Howell car, including a daughter Anna Sue Collins, were injured. Plaintiff brought the present wrongful death action in Oakland Circuit Court. Defendant's answer denied negligence and asserted "sudden emergency" as an affirmative defense. Before the wrongful death suit reached trial, Anna Sue, a Tennessee resident, obtained a judgment in the Michigan Federal District Court, Eastern District, against defendant for the injuries she received in the accident. Thereafter plaintiff moved for partial summary judgment in the Oakland Circuit Court alleging that the prior adjudication in favor of Anna Sue in the

district court was a bar to relitigating the issue of defendant's negligence, leaving only the question of damages for the jury's determination.

The trial court (Moore, J.) granted the motion insofar as it related to Anna Sue, but denied it as to the remaining interested parties. The Court of Appeals (T. G. KAVANAGH, J. and Miller, J.; QUINN, J., dissenting) remanded the case to the trial court for reconsideration of the motion, holding: (1) The motion should have been granted, if at all, as to *all* interested parties (plaintiffs); (2) The trial court had discretion to apply collateral estoppel against defendant, mutuality not being a controlling factor. Both parties appealed and we granted leave.

Issues:

(1) (As stated by defendant): Is a judgment in favor of one passenger for injuries arising out of an automobile accident conclusive as to issues of negligence against the defendant in a subsequent action growing out of the same accident by the estate of another passenger against the same defendant?

(2) Is the above matter of discretion for the trial court?

We should at the outset define and clarify controlling principles which have been imprecisely employed and confused, not only by counsel but by the courts. The distinctions are set out with much clarity[1] in Restatement Judgments, § 68 at 293, 294 as follows:

"It is important to distinguish the effect of a judgment as a merger of the original cause of action in the judgment or as a bar to a subsequent action

---

[1] Comparable definitions may be found in 46 Am Jur 2d, Judgments, §§ 396, 397, p 563; *Annotation: Estoppel by Judgment—Mutuality Need,* 31 ALR3d 1044. An interesting, but by no means talismanic, classification of bar and merger *vis-à-vis* estoppel is suggested in form of "claim preclusion" and "issue preclusion" in Vestal, Preclusion, 1 Res Judicata Variables: Parties, 50 Iowa L Rev 27 (1964).

upon the original cause of action from its effect by way of collateral estoppel in a subsequent action between the parties based upon a different cause of action. If a judgment is rendered in favor of the plaintiff, the cause of action upon which the judgment is based is merged in the judgment, and the plaintiff cannot thereafter maintain an action on the original cause of action (see § 47). If the judgment is rendered in favor of the defendant on the merits, the original cause of action is barred by the judgment (see § 48). In either case the original cause of action is extinguished by the judgment no matter what issues were raised and litigated in the action, or even if no issues were raised or litigated and judgment was rendered by default.

"On the other hand, where the subsequent action is based upon a different cause of action from that upon which the prior action was based, the effect of the judgment is more limited. The judgment is conclusive between the parties in such a case as to questions actually litigated and determined by the judgment. It is not conclusive as to questions which might have been but were not litigated in the original action. This is the doctrine of collateral estoppel."

These controlling principles have been long and well recognized by this Court. *Jones* v. *Chambers* (1958), 353 Mich 674, and authorities cited therein.

It is obvious that, by very definition, one of the critical factors in applying the foregoing principles as to collateral estoppel involves the determination of whether the respective litigants were parties or privy to a party to an action in which a valid judgment has been rendered. Again, for definitional purposes,[2] we turn to *Bernhard* v. *Bank of America National Trust & Savings Ass'n* (1942), 19 Cal 2d 807 (122 P2d 892), which plaintiff urges upon us as

---

[2] See also Restatement Judgments, § 78 *et seq.*; 50 CJS, Judgments, § 788 *et seq.*

the benchmark authority to be followed both in theory and application. Justice Traynor in *Bernhard* lays the definitional groundwork as to privity and mutuality at 19 Cal 2d 811 (122 P2d 894):

"Many courts have stated the facile formula that the plea of res judicata is available only when there is privity and mutuality of estoppel. (See cases cited in 2 Black, Judgments (2d. ed.), secs. 534, 548, 549; 1 Freeman, Judgments (5th ed.), secs. 407, 428; 35 Yale L.J. 607, 608; 34 C.J. 973, 988.) Under the requirement of privity, only parties to the former judgment or their privies may take advantage of or be bound by it. (*Ibid.*) A party in this connection is one who is 'directly interested in the subject matter, and had a right to make defense, or to control the proceedings, and to appeal from the judgment.' (1 Greenleaf, Evidence (15th ed.), sec. 523. See cases cited in 2 Black, Judgments (2d ed.), sec. 534; 15 R.C.L. 1009; 9 Va. L. Reg. (N.S.) 241, 242; 15 Cal. Jur. 190; 34 C.J. 992.) A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase. (See cases cited in 2 Black, Judgments (2d ed.), sec. 549; 35 Yale L.J. 607, 608; 34 C.J. 973, 1010, 1012; 15 R.C.L. 1016.) The estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him. (See cases cited in 2 Black, Judgments (2d ed.), sec. 534, 548; 1 Freeman, Judgments (5th ed.), sec. 428; 35 Yale L.J. 607, 608; 34 C.J. 988; 15 R.C.L. 956.)"

Turning to the facts of the instant case, may it be legally concluded that either plaintiff's estate or Anna Sue were parties or privies in the former Federal suit so as to be concluded upon the issue of negligence in the instant suit? The trial court ruled in the affirmative as to Anna Sue but in the

negative as to the estate. The Court of Appeals believed either both or none should be estopped. Neither of these decisions are wholly correct.

Certainly it may not be contended that the legally-appointed representative of the estate of Hattie Howell or William Howell as an individual or guardian of James Howell was a party to Anna Sue's Federal action. They are separate legal entities: Anna Sue acting in her own individual right and the estate-individual-guardian acting in their legal capacities and prosecuting their separate claims.[3] The parties remain as legal strangers, even though the latter were interested in the outcome of the action, or were witnesses, or participated in a limited representative capacity for the benefit of one of the parties. Restatement Judgments, § 93 pp 463, 464. In no sense did the estate-individual-guardian, although interested in the outcome, have the right to make defense, control the proceedings or appeal from a judgment which would have been adverse to Anna Sue's claim.

The conclusion equally applies to the converse situation. Although Anna Sue was clearly the party in the Federal suit and recovered judgment upon *her* personal injuries, she appears in the instant case solely as an heir at law of Hattie Howell and bases her claim exclusively upon rights derived from the latter's wrongful death. See, *e.g.,* Complaint, Count I, ¶ 15. Thus, the general rule, as stated most succinctly in 46 Am Jur 2d, Judgments, § 525, p 678, precludes the operation of *res judicata* to Anna Sue's derivative interests where subsequently brought in her representative capacity:

---

[3] Although innumerable decisions may be cited in support, the distinction finds crystallized clarity in the workmen's compensation situation wherein plaintiff sues for statutory benefits in her individual right and subsequently prosecutes a third-party action in her representative capacity for wrongful death. See *Jordan* v. *C. A. Roberts Company* (1967), 379 Mich 235, and authorities cited therein.

"Where a person brings an action or is sued in his individual right, a judgment rendered for or against him is not operative under the doctrine of res judicata in a subsequent action brought by or against the same person in a representative capacity. Similarly, a judgment rendered in an action in which one of the parties appears in a representative capacity is not operative under the doctrine of res judicata in a subsequent action involving the same party in his individual right. These rules have been denied application, however, where a party to one action in his individual capacity and to another action in his representative capacity is in each case asserting or protecting his individual rights."[4]

To place this rule, which is frequently involved in litigation between receivers, co-obligors, stockholders, *etc.,* in the proper factual perspective of personal injuries arising from automobile accidents, we quote from 133 ALR 181 at 185:

"With but few exceptions it has been held, in cases in which the question has arisen, that a judgment for the plaintiff in an action growing out of an accident was not res judicata, or conclusive, as to issues of negligence or contributory negligence, in a subsequent action growing out of the same accident, by a different plaintiff against the same defendant."

As accurately observed by the annotator, this is the law in Michigan. *Laskowski* v. *People's Ice Co.* (1918), 203 Mich 186.

It is noted, furthermore, that were we to consider the plaintiff either as a party or privy thereto, the assertion of *res judicata* would still fail for want of mutuality. In short "both the litigants must be alike concluded by the judgment or it binds neither".[5]

[4] 46 Am Jur 2d, Judgments, § 525, p 678; see also Restatement Judgments, § 80 *et seq.*; 50 CJS, Judgments, § 788, p 324.

[5] 46 Am Jur 2d, *supra,* § 521, p 673.

Plaintiff is not bound in the instant case, as it pertains to defendant's negligence or Hattie Howell's lack of contributory negligence, by the judgment in Anna Sue's successfully prosecuted Federal case. Neither can defendant be bound.

This, of course, lays bare the thrust of plaintiff's arguments on appeal, *viz.*, that our Court abandon the well-established requirement of mutuality. We are unwilling to depart from the law recognized and reiterated in *Clark* v. *Naufel* (1950), 328 Mich 249,[6] for the following reasons.

First, it is apparent from a review of the general authorities that those few jurisdictions which have abandoned or modified the mutuality requirement have done so in a very limited manner.[7] Thus, the

---

[6] Plaintiff questions the continuing vitality of *Clark* v. *Naufel,* particularly in view of our decision in *Jones* v. *Chambers* (1958), 353 Mich 674. We reaffirm *Clark* v. *Naufel.* The basis for our reaffirmance and the factors distinguishing *Clark* v. *Naufel* from *Jones* v. *Chambers,* as well as *DePolo* v. *Greig* (1954), 338 Mich 703, is accurately analyzed and discussed in *Mackris* v. *Murray* (CA6, 1968), 397 F2d 74.

Mutuality remains the law in the majority of states today and recent decisions have reaffirmed adherence to the concept. *Stillpass* v. *Kenton County Airport Bd.* (Ky, 1966), 403 SW2d 46; *Smith* v. *Preis* (Mo, 1965), 396 SW2d 636; *Reilly* v. *Dziamba* (App Div, 1966), 90 NJ Super 325 (217 A2d 458); *Reardon* v. *Allen* (Law Div, 1965), 88 NJ Super 560 (213 A2d 26); *Shaw* v. *Eaves* (1964), 262 NC 656 (138 SE2d 520); *First National Bank of Cincinnati* v. *Berkshire Life Insurance Co.* (1964), 176 Ohio St 395 (199 NE2d 863); *Booth* v. *Kirk* (1963), 53 Tenn App 139 (381 SW2d 312). There are even California decisions which appear to disregard the leading case abandoning mutuality, *Bernhard* v. *Bank of America National Trust & Saving Ass'n* (1942), 19 Cal 2d 807 (122 P2d 892). See, *e.g., Associated Creditors' Agency* v. *Haley Land Co., Inc.* (DC App, 1966), 239 Cal App 2d 610, 615 (49 Cal Rptr 1, 5); *Great Western Furniture Co.* v. *Porter Corp.* (DC App, 1965), 238 Cal App 2d 502, 508, 509 (48 Cal Rptr 76, 81) (citing the 1925 edition of A. Freeman, Judgments and 17 California cases, but not *Bernhard,* and stating that, "[T]he general rule is that there must be an identity of the parties to the actions before the doctrine [of collateral estoppel] can become operative.").

Unlike the New York Court of Appeals in *B. R. DeWitt, Inc.,* v. *Hall* (1967), 19 NY2d 141, 147 (278 NYS2d 596, 601, 225 NE2d 195, 198), we are unwilling to write the obituary that "the 'doctrine of mutuality' is a dead letter".

[7] See 31 ALR3d 1044; 46 Am Jur 2d, *supra,* §§ 521–523, pp 673–

California Court, which in *Bernhard* v. *Bank of America, supra,* took the lead to abandon mutuality and permitted *defensive* assertion of collateral estoppel in the administratrix's action against defendant, qualified its position in *Nevarov* v. *Caldwell* (1958), 161 Cal App 2d 762 (327 P2d 111), and refused to permit *offensive* assertion of collateral estoppel by plaintiff-stranger in an automobile accident case. Leaving aside the "public policy" reasons articulated by the California Court in support of expansion or contraction of the rule, it is quite apparent that the Court in *Nevarov* was moved by some very real considerations not evident in *Bernhard:*

"Unquestionably the negligence of defendant Caldwell which caused or contributed to James Nevarov's injuries was identical with the negligence which his parents assert against defendant. In James' case it was not complicated by any claim of contributory negligence on his part and would fasten liability upon defendant though it operated only as a contributing proximate cause concurring

676; see also Currie, Mutuality of Collateral Estoppel: Limits of the *Bernhard* Doctrine, 9 Stanford L Rev 281 (1957); Currie, Civil Procedure: The Tempest Brews, 53 Cal L Rev 25 (1965); Moore and Currier, Mutuality and Conclusiveness of Judgments, 35 Tulane L Rev 301 (1961).

Although there may be merit to Justice Traynor's observation in *Bernhard* that the well-recognized exceptions to the mutuality rule in effect produce the same result as unilateral estoppel or non-mutuality, it should be noted that the recognized exceptions are confined to *defensive* pleading of collateral estoppel by only a certain class of defendants in special situations. See discussions in *Spettigue* v. *Mahoney* (1968), 8 Ariz App 281, 283 (445 P2d 557, 559); 1B Moore, Federal Practice, § 0.412, p 1801; Restatement Judgments §§ 96, 99, pp 472, 493; 31 ALR3d 1044, § 3b, p 1064. This fact is quite significant in determining whether collateral estoppel should or should not apply. As observed by the commentator in 31 ALR3d 1044 at 1072, "The courts are more inclined to permit the defensive, than the offensive, use of the doctrine of collateral estoppel". In line with this general authority, see our Court's comments and holding in *Walz* v. *Reliance Insurance Co. of Philadelphia* (1922), 221 Mich 345, quoted with approval in *DePolo* v. *Greig, supra,* at 712.

with negligence upon the part of James' father, the appellant herein. With reference to the parents, however, defendant's negligence must have been the sole proximate cause of their injuries or defendant cannot be held liable. Thus his negligence takes on a different aspect when viewed by a jury in reference to the respective claims of James and his parents. And whether it would be fair to apply the Bernhard doctrine in the parents' case becomes a serious question."[8]

Our Court, having more than passing familiarity and experience with the problem,[9] adheres to its decision in *Clark* v. *Naufel* as applicable to the facts of the instant case.

A more fundamental reason for declining plaintiff's invitation to abandon the requirement of mutuality is that we are not convinced that to do so would promote the ends of justice or increase efficiency in the administration of our courts. Surely, we must strike a balance between the competing interests: (a) that the litigant against whom the doctrine is asserted has had his day in court; *vis-à-vis* (b) that repetitious and needless litigation which burden our already overloaded court dockets must be avoided. But we need not sacrifice a well-established and valuable rule to achieve this balance.

As noted by the commentators and the courts, many of the problems giving rise to *res judicata*

---

[8] *Nevarov* v. *Caldwell* (1958),. 161 Cal App 2d 762, 767 (327 P2d 111, 115); see also *Spettigue* v. *Mahoney, supra,* which declined to apply *Bernhard* despite the fact that "In this state [Arizona], a jury may award the plaintiff full recovery though it finds the plaintiff guilty of contributory negligence". *Id.* at 283, note 3. Compare with authorities cited in 31 ALR3d 1044, § 7, p 1086.

[9] See, *e.g., DePolo* v. *Greig, supra,* permitting defensive assertion of collateral estoppel under a recognized exception to the requirement of mutuality and compare with the negligence-contributory negligence claims in the personal injury actions discussed in *Clark* v. *Naufel.*

have been ameliorated by liberalized rules of practice in Federal and state jurisdictions allowing joinder of parties.[10]   This is particularly true where, as in the instant case, same counsel represent plaintiffs and defendant in the successive suits.   In point of fact, the abandonment of the mutuality doctrine would in many instances create more pitfalls to orderly and efficient administration of justice.   The dangers were extensively discussed in *Nevarov, supra,* at 767, 768:

"This action is part of a larger pattern which has developed in personal injury cases in Los Angeles County and probably elsewhere in the state.   The attorney who has a difficult case or group of cases on his hands files in the municipal court an action for recovery from a single defendant for property damage or minor personal injuries in the expectation that liability will be easily and speedily established and the question of damages left as the only issue to be decided in the principal action or actions brought in the superior court because res judicata establishes defendant's liability.   This strategy (quite legitimate if *Bernhard, supra,* has universal application) is applied to multiple injuries to different people arising from the same accident.   This occurs repeatedly in situations developed by accidents such as the collision of two aeroplanes over the Grand Canyon; the injury to many passengers on the San Diego-Los Angeles line of a railroad where the train was wrecked and the engineer claimed a momentary blackout; the breaking of the St. Francis Dam many years ago, followed by a great number of claims against the City of Los Angeles; the collision between the Andrea Doria and the Stockholm off the New England Coast in recent years.   As several commentators have pointed out, *Bernhard, supra,* if held applicable to such situa-

---

[10] See Semmel, Collateral Estoppel, Mutuality and Joinder of Parties, 68 Col L Rev 1457 (1968), and authorities cited therein.

tions, means that a defendant who obtains a favorable judgment, or 10 of them, cannot use those judgments against other claimants because the want of mutuality would spell absence of due process if the judgments were pleadable in bar or estoppel. But the plaintiff in the eleventh case is fortunate enough to establish liability and the defendant is confronted by a conclusive adjudication of its own negligence in the next 10 or 20 cases,—this being due to the fact that mutuality is not necessary and it has had its day in court, in fact 11 of them (none of which resulted adversely except the eleventh). This looks like the scales of justice are weighted in favor of the plaintiff. That our Supreme Court meant no such lopsided justice seems reasonably plain from an examination of its rulings later than *Bernhard, supra.*"

Other examples may be multiplied.[11] But the point to be observed is that such potential consequences will increase rather than diminish the burdens of our courts. As stated by Professor Moore:[12]

"But if the requirement of mutuality is abrogated, and an adverse judgment is thereby made available to the whole world collaterally to conclude the losing party on every adjudicated issue, no sensible and financially responsible litigant will, in certain situations, be willing to submit to an adverse judgment without exhausting every possible means to avert it. If such a judgment is thus made into something like an adverse in rem adjudication, with an invitation to the world to make the most of it, suits that might otherwise have been defaulted, compromised

---

[11] The more common course may be to secure a judgment for property damage in a relatively minor amount and then, by affirmative use of collateral estoppel, preclude trial on the merits of defendant's negligence in a subsequent wrongful death action involving substantial damages. The hypothetical is well stated in *Mackris* v. *Murray, supra,* at 81.

[12] 1B Moore, Federal Practice, § 0.412 at 1811.

or let slide will be litigated to the fullest, contrary to the public interest in minimizing litigation."

Finally, our Court, when confronted by equally-forceful competing considerations, cannot, in all candor, hesitate to strike the balance in favor of our adversarial system. As pertains to abandonment of mutuality, we endorse the Court's comment in *Spettigue* v. *Mahoney, supra,* at 286:

"With some hesitation, because this court holds in veneration the acumen of the author of the *Bernhard* opinion, Chief Justice Roger J. Traynor, we suggest that this approach has turned wrong-side-out a natural burden. It is the adversary system that we have espoused in our system of justice. The adversary system prevails in many aspects of the life of man but contest rules seldom provide that one contestant must be declared the loser to a competitor that he has never met on the field of contest."

We must in end analysis reaffirm the requirement of mutuality as held in *Clark* v. *Naufel.* Neither can we accept the proposition of the Court of Appeals that "the application of estoppel is best left to the discretion of the trial judge". The course of justice is best served by adherence to a long-established and definitive rule which our bench and bar well recognizes rather than permit an *ad hoc* formulation of a rule based upon innumerable and unmanageable factors.[13]

---

[13] Some of the considerations in determining the availability of the doctrine of collateral estoppel notwithstanding, a lack of mutuality or privity are set out in 31 ALR3d 1044 at 1052–1054. See also *Spettigue* v. *Mahoney, supra,* at 286. To abandon mutuality and proceed on a "full and fair hearing" standard would open the Pandora's box of problems rhetorically posed by Professor Semmel, *supra,* at 1469:

"The real problem is what standard the court in the second action should apply if it undertakes to determine whether the first action was litigated 'with full vigor and opportunity to be heard.' Does a defendant in a small property damage claim meet the test? If he

In conformity with the foregoing opinion, we reaffirm this Court's position in *Clark* v. *Naufel* and hold defendant is not collaterally estopped from defending against plaintiff's claim of negligence. The judgment of the trial court denying partial summary judgment as prayed for by plaintiff administrator-individual-guardian is affirmed. The judgment of the trial court granting partial summary judgment as to the claim of Anna Sue Collins as heir at law of the estate of plaintiff is reversed. The decision of the Court of Appeals is reversed. The cause is remanded for further proceeding consonant with this opinion. Neither party having fully prevailed, costs are not taxed.

Adams, T. E. Brennan, Swainson, and Williams, JJ., concurred with T. M. Kavanagh, C. J.

Black, J. (*concurring*). Not caring to join the Court's unnecessary waltz around the country to the variable outstate music of estoppel by judgment, and being quite content with the concededly applicable value of our own pertinent precedents, particularly *Clark* v. *Naufel* (1950), 328 Mich 249 (syll. # 4), I concur in reversal.

Judge Quinn, dissenting below (20 Mich App 140, 147), was quite right in applying *Clark* v. *Naufel,* and in calling it to the attention of two Brethren

---

knows or has reason to fear that an adverse decision will be utilized by nonparties to the first action, he may very well proceed with greater vigor, but there is no assurance of this since insurance companies currently seek to dispose of property damage claims with the minimum of litigation expense. As the dissent in *B. R. DeWitt Inc.* v. *Hall* noted, how do we treat cases where the defendant has different liability insurers for personal injury claims and property damage claims? How can a judge evaluate the vigor of litigation in a case in which he did not sit? How can he weigh the difficulty a defendant faced by being forced to litigate in one jurisdiction rather than another? How did the burden of proof or applicable presumption affect the result?"

whose choice it was to ignore that authority in favor of a new doctrine. That doctrine was drawn apparently, but quite erroneously, from Justice COOLEY's opinion of *Fifield* v. *Edwards* (1878), 39 Mich 264. The holding there was that an estoppel by previous judgment cannot prevail where the specific claim in question was actually excluded from judicial consideration in the first action.

T. G. KAVANAGH, J., did not sit in this case.