**Paul METZLER and Dorothy Metzler, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 92–72159.

United States District Court, E.D. Michigan, S.D.

Sept. 20, 1993.

---

Jonathan Aronson, Mount Clemens, MI, for plaintiffs.

Keith V. Morgan, Trial Atty. Tax Div. U.S. Dept. of Justice, Washington, DC, for defendant.

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On May 3, 1993, plaintiffs filed the instant motion for summary judgment. Following an unsuccessful attempt by the parties to settle this matter, defendant filed its response August 5, 1993. Plaintiffs filed a reply September 7, 1993. By informal agreement of the parties, and pursuant to Local Rule 7.1(e)(2) (E.D.Mich., Jan. 1, 1992), no oral argument was heard.

### I. Facts

In October 1989, Maryland National Bank ("the Bank") obtained a judgment for $7,115.66 against the plaintiffs' son, Robert Metzler. The Bank thereafter obtained a writ of execution against Robert Metzler's property. Pursuant to this writ of execution, sometime in early August 1990 process server Chuck Heide seized, among other things, a White Predator Marine boat that he believed was the property of Robert Metzler. Robert Metzler was the president of Predator Marine, the company that manufactured the boat and that had possession of the boat at the time of the seizure.

The plaintiffs thereafter sued the Bank in the Macomb County District Court on the grounds that they were the true owners of the boat, and not Robert Metzler or Predator Marine. On the afternoon of August 30, 1990, the Macomb County District Court entered an order staying any execution on property, except property titled solely in the name of Robert Metzler. An auction of the boat had occurred earlier that day. The boat was sold at auction for $44,000. Immediately following the sale, Internal Revenue Service agent Carl Gusse, on behalf of the United States, issued a formal levy on the proceeds of the sale to satisfy the delinquent federal tax debt of Robert Metzler.

At a Macomb County District Court hearing held on September 12, 1990, a request for continuation of the temporary stay was granted. On September 13, 1990, state court officer Chuck Heide distributed assets from the auction of the boat to the Internal Revenue Service ("IRS") by issuing a cashier's check in the sum of $26,794.35.

An evidentiary hearing was held in Macomb County District Court on May 20, 1990 to determine the ownership of the boat. On June 24, 1991, the Macomb County District Court entered an order finding that the boat belonged to plaintiffs and setting aside the sale.

The Bank appealed the decision, but later withdrew the appeal and entered into a settlement agreement with the plaintiffs. In the settlement the parties specifically agreed, *inter alia*, that the Bank would pay plaintiffs $5,000.00; that plaintiffs released the Bank, but not the other parties involved in the sale and levy of the proceeds, from any other claims relating to the boat; and that a stipulation would be entered *affirming* the June 24, 1991 order of the Macomb County District Court. Thereafter, Michigan Circuit Court Judge George Steeh entered an order affirming the Macomb County District Court's June 24, 1991 order and, *inter alia*, ordering that the funds received as a result of the sale were to be returned to Paul and Dorothy Metzler, and that the sum of $26,-794.35 paid by the Bank to the IRS was the property of Paul and Dorothy Metzler. Plaintiffs seek, through the instant lawsuit, the return from the IRS of the sum of $26,-794.35. The plaintiffs, Paul and Dorothy Metzler, bring this action pursuant to 26 U.S.C. § 7426(a)(1) on the ground that the government wrongfully levied upon the proceeds from the boat's sale.

## I. *Standard of Review*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

The only material issue of fact in this case is whether the boat belonged to plaintiffs. The government contends that it is not bound by the state court finding that plaintiffs did own the boat because the settlement agreement compromised the validity of that order and because the government was not in privity with the Bank for purposes of collateral estoppel.

Section 7426 of the Internal Revenue Code, subsection (a)(1), reads:

(1) **Wrongful levy.** If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

26 U.S.C. § 7426.

In their motion for summary judgment, plaintiffs rely primarily on the June 24, 1991 state court judgment holding plaintiffs to be the rightful owners of the boat and setting aside the sale. Plaintiffs argue that the United States levied upon the funds from an illegal sale and thereby acquired no legal title to the $26,794.35. The court agrees.

■ The government makes the factual assertion that "the judgment on the issue of ownership of the boat was compromised." Government's Response Brief at 6. In support of this assertion, the government submits the settlement agreement between plaintiffs and the Bank. From the agreement, however, it is clear that the judgment on the issue of ownership was not compromised but rather was *affirmed* by the settlement agreement. It is true that appellate courts often agree, pursuant to a settlement agreement, to enter an order vacating all the lower court judgments in a case and dismissing the case from the docket. *See, e.g., U.S. Philips Corp. v. Windmere Corp.,* 971 F.2d 728 (Fed.Cir.1992). However, vacatur, as this practice is called, generally occurs only on motion of the parties. *See generally id.* (vacatur is not always *granted,* whatever the circumstances). The parties in the state court action in question here, made no motion for vacatur of the lower court's judgments. In fact, the terms of the settlement called for the appellate court to enter an order *affirming* the district court's order regarding ownership of the boat. Thus, the settlement agreement in no way compromised the district court's order finding plaintiffs to be the rightful owners of the boat.

■ The government's second argument is that, under Michigan law, it is not bound by the June 24, 1991 order of the state court because it was not a party to that suit and because there was no privity between the United States and any of the parties. To determine the preclusive effect of a prior state court judgment, federal courts must apply the preclusion law of the state in which that prior judgment was rendered. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985). Thus, this court must look to Michigan law to determine whether the government is bound, under the principles of collateral estoppel, by the state court's June 24, 1991 order.

■ Collateral estoppel, or issue preclusion, precludes relitigation of issues actually determined in a prior lawsuit between parties or their privies. *Darin & Armstrong v. Ben Agree Co.,* 88 Mich.App. 128, 134, 276 N.W.2d 869, *lv. app. den.,* 406 Mich. 1007 (1979). A privy is "one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Howell v. Vito's Trucking & Excavating Co.,* 386 Mich. 37, 43, 191 N.W.2d 313 (1971). The government argues simply that "[i]t is clear that the United States is not in privity with the Maryland National Bank in this matter." Government's Brief at 5. The court disagrees.

The United States did in fact acquire its interest in the proceeds of the sale through the Bank.[1] And though the interest was not acquired after rendition of the judgment itself, it was acquired after rendition of a state court order directing a stay of the execution on the property. The very purpose of a stay is to maintain the status quo until such time as the court has an opportunity to decide the case on its merits. For reasons unclear to this court, the order of stay was not followed and the proceeds from the sale were distributed to the IRS.[2] Thus, the court finds that defendant was in privity with the Bank, a party to the proceedings in the state court action,[3] because it acquired an interest in the subject matter of the litigation (the proceeds from the boat) after an order of stay as to those proceeds was issued.

■ Even assuming that the United States is not bound by the state court judgment under the doctrine of collateral estoppel, the court finds that the United States is bound under principles of equity to return the plaintiffs' money. Because the funds from the sale of the boat were distributed to the IRS in violation of a court order directing the *status quo* to be maintained, this court finds the plaintiffs hold title to the monies in the form of a constructive trust.

■ When deciding the nature of an affected party's property interest, federal courts employ applicable state law principles. *See, e.g., United States v. Certain Real Property Located at 2525 Leroy Lane,* 910 F.2d 343, 347 (6th Cir.1990); *United States v. Certain Real Property Located at 750 East Shore Drive,* 800 F.Supp. 547, 549 (E.D.Mich. 1992). Under Michigan law,

> [w]hen it is shown that title has been obtained through ... circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property, and there are no intervening rights of bona fide purchasers, equity will impress a constructive trust on the property and turn it over to the one to whom it rightfully belongs.

*Potter v. Lindsay,* 337 Mich. 404, 411, 60 N.W.2d 133 (1953). Thus, a constructive trust is an equitable remedy that is imposed where property is acquired by fraud, undue influence, or other circumstances that render it unconscionable for the wrongdoer to retain title or the benefits derived therefrom. *McMullen v. Christenson,* 678 F.Supp. 1277, 1280 (E.D.Mich.1987); *LeZontier v. Shock,* 78 Mich.App. 324, 333–34, 260 N.W.2d 85 (1977).

In the instant case, the United States had an interest in collecting the income taxes owed by Robert Metzler. In levying the proceeds from the sale of the boat, however, the United States had no belief that the property from which the money was derived

---

**1.** The government argues that because it did not acquire its interest through inheritance, succession or by purchase, that there is no privity. The *Howell* opinion reads *"as by* inheritance, succession, or purchase." *Howell,* 386 Mich. at 43, 191 N.W.2d 313 (emphasis added). Clearly, these three types of privity are offered as examples and not as an exhaustive list.

**2.** The order specifically ordered state court officer Chuck Heide, et al., to stay the writ of execution entered by the state district court on June 27, 1990, "except as to property that is titled solely in the name of Robert Metzler, only." In its June 24, 1991 ruling, the court found that Mr. Heide knew that the property was not titled to Robert Metzler. See Court's Opinion at 2, Attached as Exhibit F to Plaintiff's January 28, 1993 Request for Admissions of Fact.

**3.** The court further finds that the Bank had the same interest, that is, a substantial financial interest, as the United States would have had in fully defending against the state court action.

belonged to Robert Metzler. On March 31, 1993, a deposition of the IRS agent, Carl Gusse, revealed that, at the time he levied upon the proceeds of the sale, the agent did not believe that the boat belonged to Robert Metzler and in fact, the agent had "no understanding" and "no idea" who owned the boat. Deposition of Carl Gusse at 14–15, Attached as Exhibit 1 to Plaintiffs' Reply.

Thus, in the first instance plaintiffs' money was levied upon by the IRS, absent even the slightest investigation on the part of that agency into whether the money rightfully belonged to the assessed person. Then, the plaintiffs' money was distributed to the IRS in violation of a court order directing stay. Moreover, even after it was revealed to the United States that the seizure and sale of the boat was improper, the United States relentlessly has continued to refuse to return to plaintiffs what is legally theirs. This court finds that such circumstances render it unconscionable for the United States to retain the $26,794.35.

Thus, for the foregoing reasons, the court finds that there is no genuine issue of material fact as to whether plaintiffs were the owners of the White Predator Marine boat from which the IRS levied funds. Therefore, the court will grant plaintiffs' motion for summary judgment and order the IRS to return to plaintiffs the sum of $26,794.35 plus interest.

### ORDER

Therefore, it is hereby **ORDERED** that plaintiffs' motion for summary judgment is **GRANTED**.

It is further **ORDERED** that the United States return to plaintiffs the sum of $26,794.35 plus interest.

**SO ORDERED.**