Cavanagh, J.
(dissenting). In this first-party, no-fault action, defendant seeks to invoke the doctrine of collateral estoppel to preclude plaintiff from relitigating an issue decided in plaintiff’s third-party negligence action. We are again called upon to examine the mutuality requirement of the doctrine of collateral estoppel as it has been traditionally applied in Michigan. Because the majority imprudently departs from this tradition, I must respectfully dissent.
The doctrine of collateral estoppel, also known as issue preclusion, strikes a balance between the need to eliminate repetitious litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their particular claims. Storey v *696 Meijer, Inc, 431 Mich 368, 372-373; 429 NW2d 169 (1988). As a preclusion doctrine, collateral estoppel serves “an important function in resolving disputes by imposing a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims.” Nummer v Dep’t of Treasury, 448 Mich 534, 541; 533 NW2d 250 (1995) (emphasis added). Collateral estoppel applies when a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment. Senior Accountants, Analysts & Appraisers Ass’n v Detroit, 399 Mich 449, 458; 249 NW2d 121 (1976); Howell v Vito’s Trucking & Excavating Co, 386 Mich 37, 41-42; 191 NW2d 313 (1971). In addition, Michigan law requires mutuality of estoppel. Storey, supra at 373 n 3; Howell, supra at 41-42; Lichon v American Universal Ins Co, 435 Mich 408, 427; 459 NW2d 288 (1990).
“[Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have also been a party, or privy to a party, in the previous action.” Lichon, supra at 427. Stated differently, “estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him.” Howell, supra at 43 (citations omitted). Unless both parties in a subsequent action are bound by a prior judgment, neither party may use that prior judgment as determinative of an issue in the subsequent action.
Until today’s decision, mutuality of estoppel unquestionably remained the law in Michigan. Because defendant was not a party in the third-party action, mutuality is absent and collateral estoppel could not be invoked. Further, defendant acknowl *697 edged that had the issue of plaintiff’s injury been decided unfavorably to defendant’s position, it would not have been bound by the earlier judgment. Nonetheless, defendant asked this Court to either abrogate the mutuality requirement or create a new exception so that it may now use the prior judgment for its own advantage. The majority eagerly granted defendant’s request and joined the so-called “modem trend.”
For many years, mutuality of estoppel was the recognized rule, but the rule began to come under fire by courts in other jurisdictions. See, e.g., Bernhard v Bank of America Nat'l Trust & Savings Ass’n, 19 Cal 2d 807; 122 P2d 892 (1942). The modem trend has been to abandon the mutuality requirement in whole or in part. Some jurisdictions have rejected mutuality depending on whether collateral estoppel is asserted offensively or defensively. Other jurisdictions, however, have continued to adhere to the mutuality requirement despite the modem trend.[1]
Defendant’s arguments in support of yielding to the modem trend, such as preserving judicial resources, are by no means novel and have previously been rejected by this Court. In fact, this Court has consist *698 ently and explicitly declined the invitation to follow the modem trend. In 1971, this Court made a conscious decision to resist the modem trend and refused to abrogate the mutuality requirement. Howell, supra at 43. This Court stated:
A more fundamental reason for declining plaintiff’s invitation to abandon the requirement of mutuality is that we are not convinced that to do so would promote the ends of justice or increase efficiency in the administration of our courts. Surely, we must strike a balance between the competing interests: (a) that the litigant against whom the doctrine is asserted has had his day in court; vis-á-vis [sic] (b) that repetitious and needless litigation which burden our already overloaded court dockets must be avoided. But we need not sacrifice a well-established and valuable rule to achieve this balance.
* * *
In point of fact, the abandonment of the mutuality doctrine would in many instances create more pitfalls to orderly and efficient administration of justice. [Id. at 48-49.]
Howell involved a case of offensive collateral estoppel, but it is evident that the Court was basing its commitment to the mutuality requirement on larger policy concerns. “The course of justice is best served by adherence to a long established and definitive rule which our bench and bar well recognizes rather than permit an ad hoc formulation of a rule based upon innumerable and unmanageable factors.” Id. at 51. As recently as 1990, this Court expressly reaffirmed its commitment to mutuality of estoppel in a case involving defensive collateral estoppel. Lichon, supra at 427-428.
Again, the arguments in support of abrogation have been duly considered by earlier compositions of this *699 Court. Despite these earlier decisions, the Court’s current majority now finds these rehashed arguments persuasive, finding error where none had been discovered before. The doctrine of stare decisis is more than a fad and decades of precedent cannot be readily discounted as the majority suggests. “This Court has stated on many occasions that ‘[u]nder the doctrine of stare decisis, principles of law deliberately examined and decided by a court of competent jurisdiction should not be lightly departed.’ ” Brown v Manistee Co Rd Comm, 452 Mich 354, 365; 550 NW2d 215 (1996), quoting Boyd v W G Wade Shows, 443 Mich 515, 525 n 15; 505 NW2d 544 (1993) (citations omitted). Moreover, this Court should “ ‘not overrule a decision deliberately made unless [it] is convinced not merely that the case was wrongly decided, but also that less injury would result from overruling than from following it.’ ” Brown, supra at 365, quoting Boyd, supra at 524. I perceive no error, flagrant or otherwise, committed by this Court in our earlier decisions that specifically declined to follow the modem trend. Like the learned members who previously sat on this Court, I find defendant’s rehashed arguments equally unpersuasive.
Nor am I persuaded that this Court should create a new exception to the mutuality requirement. This Court has noted several “well-established” exceptions to the mutuality requirement. Lichon, supra at 428 n 16. However, the relationship between plaintiff and defendant does not fit into one of these recognized exceptions. For example, an exception to the mutuality requirement has been recognized where the liability of one party is dependent on the culpability of the other party. DePolo v Greig, 338 Mich 703, 711; 62 *700 NW2d 441 (1954). The relationship between plaintiff and defendant as insured and insurer is simply not the type of special relationship that has traditionally formed the basis of the “well-established” exceptions.[2]
With the adoption of the majority’s new formulation, the fears that this Court expressed in Howell are beginning to ring true. This Court stated:
To abandon mutuality and proceed on a ’’full and fair hearing” standard would open the Pandora’s box of problems rhetorically posed by Professor Semmel [Collateral estoppel, mutuality and joinder of parties, 68 Col LR 1457, 1469 (1968)]:
“The real problem is what standard the court in the second action should apply if it undertakes to determine whether the first action was litigated ‘with full vigor and opportunity to be heard.’ Does a defendant in a small property damage claim meet the test? If he knows or has reason to fear that an adverse decision will be utilized by nonparties to the first action, he may very well proceed with greater vigor, but there is no assurance of this since insurance companies currently seek to dispose of property damage claims with the minimum of litigation expense. As the dissent in B. R. DeWitt Inc v Hall [19 NY2d 141, 148-149; 225 NE2d 195; 278 NYS 2d 596 (1967)] noted, how do we treat cases where the defendant has different liability insurers for personal injury claims and property damage claims? How can a judge evaluate the vigor of litigation in a case in which he did not sit? How can he weigh the difficulty a defendant faced by being forced to litigate in one jurisdiction rather than another? How did the burden of proof or *701 applicable presumption affect the result?” [Howell, supra at 51-52 n 13.]
The majority insists that the numerous factors set forth by the Restatement will assist in determining whether an issue is fully and fairly litigated. The majority further notes that “we do not believe that the factors set forth in the Restatement are ‘innumerable or unmanageable Ante at 686 n 4. Thus, under the majority’s rationale, the fears detailed by the Howell Court are necessarily unfounded.
In its next breath, however, the majority then concludes that plaintiff’s no-appeal agreement is not a situation covered by the illuminating factors set forth by the Restatement and, therefore, the majority has to resort to a waiver analysis to reach its ultimate conclusion that plaintiff fully and fairly litigated the injury issue in the third-party action. The majority acknowledges that the full and fair opportunity analysis is not an easy endeavor and courts should “proceed cautiously.” Ante at 686 n 4. As a practical matter, however, considerable judicial resources will be spent litigating the full and fair opportunity prong. Thus, the facts of this case illustrate the idea that judicial economies will not be achieved under the majority’s new approach, an idea previously acknowledged by the Howell Court.
Further, abandoning the mutuality requirement under these circumstances would undermine the purpose of the rule and reward defendant’s gamesmanship.[3] Rather than continuing to pay benefits under *702 the policy and intervene in the third-party action, defendant elected to stop making payments, thereby compelling plaintiff to expend judicial resources by bringing a first-party action. Defendant consciously made this decision because it knew that if plaintiff were found to be injured in the third-party action, it would not be bound by that judgment and could relitigate the injury issue. Alternatively, if plaintiff was not found to be injured, defendant could then assert the defense of collateral estoppel, cast plaintiff in a negative light, and play the odds that this Court would step in line and abrogate the mutuality requirement. The majority willingly conformed and even rewarded such maneuvering by inexplicably giving defendant the benefit of the new rule of law.
In general, “ ‘judicial decisions are to be given complete retroactive effect.’ ” Michigan Ed Employees Mut Ins Co v Morris, 460 Mich 180, 189; 596 NW2d 142 (1999) (citations omitted). This Court, however, has considered prospective or limited retroactive application where well-established law has been changed. Id. In resolving the “retroactive-prospective dilemma,” this Court weighs “ ‘(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice.’ ” Id. at 190 (citations omitted). The majority opinion represents a sweeping change in the law. Until today’s decision, mutuality remained the law in Michigan. In light of the bench and bar’s heavy reliance on the mutuality requirement, mutuality’s storied history, and the notion that *703 the new rule is unlikely to achieve its stated purpose, I am unclear with regard to how the majority can justify applying the rule of law announced in today’s decision to this particular defendant.
In sum, I am unwilling to abrogate the mutuality requirement in the application of collateral estoppel. I remain unconvinced that the judicial economies the majority claims are achieved by abrogation are sufficient to override concerns about the fairness afforded to litigants. The mutuality requirement already strikes an evenhanded balance between these competing interests. Accordingly, I respectfully dissent.
Kelly, J., concurred with Cavanagh, J.

 See, e.g., Leon C Baker, PC v Merrill Lynch, Pierce, Fenner & Smith, Inc, 821 So 2d 158, 165 (Ala, 2001), quoting McMillian v Johnson, 878 F Supp 1473, 1520 (MD Ala, 1995) (“ ‘It is noteworthy that Alabama has not followed the trend of abolishing the requirement that parties be identical, sometimes referred to as the mutuality of estoppel requirement.’ ”); EC v Katz, 731 So 2d 1268, 1270 (Fla, 1999) (“This case falls squarely within our traditional requirement that there be mutuality of parties in order for collateral estoppel to apply defensively.”); Hofsommer v Hofsommer Excavating, Inc, 488 NW2d 380, 384 (ND, 1992) (“Although the principle of mutuality has been abandoned in numerous jurisdictions . . . , this court has applied the mutuality rule as a prerequisite to the application of collateral estoppel.”); Rawlings v Lopez, 267 Va 4; 591 SE2d 691 (2004) (reaffirming Virginia’s adherence to the principle of mutuality in the context of defensive collateral estoppel).

 I acknowledge that the Court of Appeals has taken upon itself to create new exceptions to the mutuality requirement. See, e.g., Alterman v Provizer, Eisenberg, Lichtenstein & Pearlman, PC, 195 Mich App 422; 491 NW2d 868 (1992). However, as mentioned above, I am not convinced that this Court should create a new exception under these circumstances, nor do I express an opinion relating to any exceptions created by lower courts.

 The majority asserts that first-party, no-fault insurers, as nonparties, are generally unaware of third-party actions involving their insureds. Yet, I find it telling that this defendant stopped paying benefits a short time *702 after plaintiff filed the third-party action rather than simply denying plaintiff’s claim in the first place.