NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0046n.06

Case No. 20-1659

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 22, 2021
DEBORAH S. HUNT, Clerk

|   |   |   |
|---|---|---|
| CHRIS CODDEN, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| MANISTEE AREA PUBLIC SCHOOLS BOARD OF EDUCATION; RONALD STONEMAN; PAUL ANTAL; PAUL WEHRMEISTER; JIM THOMPSON; KRIS THOMPSON; RICHARD EDMONDSON; JULIA RADDATZ, | ) | |
| Defendants-Appellees. | ) | |

BEFORE: CLAY, GILMAN, and THAPAR, Circuit Judges.

PER CURIAM. After a local school board voted not to renew Chris Codden's employment contract, he sued the school district and its superintendent for defamation in Michigan state court. The Michigan court dismissed the suit on immunity grounds. Codden then filed this suit in federal court, alleging that the school board and its administrators fired him because of his protected speech. The district court dismissed on res judicata grounds. We affirm.

I.

Chris Codden was an employee of Manistee Area Public Schools ("MAPS"). He began his tenure as a paraprofessional (essentially a teaching assistant). He was also a wrestling coach

and later became the supervisor of an online program, Nova Net, that allowed students to make up missing credits.

MAPS's former superintendent, John Chandler, hired Codden to be Nova Net's supervisor. And although some within the school district opposed Chandler's policy initiatives, Codden was an ally. He spoke publicly in support of Chandler's policies at school board meetings and elsewhere.

But Codden's prospects took a turn for the worse when Ronald Stoneman took over as MAPS's superintendent. For starters, Julia Raddatz, the principal of a MAPS high school, removed Codden from his role as Nova Net's supervisor. Later, Superintendent Stoneman launched two investigations into Codden's conduct with the wrestling team. The first involved a noise complaint and allegations of underage drinking during an out-of-town wrestling competition. The second examined whether Codden had violated a prohibition on recruiting student athletes.

Following the investigations, Stoneman recommended a two-year suspension of Codden's coaching duties. The next school year, Stoneman recommended that the School Board not renew Codden's contract. One of the Board members who could not attend the school board meeting submitted a formal letter supporting the termination. Ultimately, the School Board accepted Stoneman's recommendation, effectively terminating Codden's employment with MAPS.

In an interview with a reporter, Stoneman said that the School Board fired Codden for his lack of candor during the investigations. Stoneman's comments appeared in the next day's paper.

In response, Codden sued MAPS and Stoneman for defamation in Michigan state court. The state court determined that state-law immunity barred Codden's defamation claim. So it granted summary disposition for the defendants.

Undeterred, Codden brought a new lawsuit in federal court. He again named MAPS and Stoneman as defendants, but this time he added School Board members Paul Antal, Paul Wehrmeister, Jim Thompson, Kris Thompson, and Richard Edmondson, as well as Principal Raddatz. He claimed that their actions amounted to First Amendment retaliation. In short, Codden claimed that he had been fired because of his public support of former Superintendent Chandler, not for a lack of candor.

The district court concluded that Michigan's doctrine of res judicata barred Codden's suit. We agree and affirm.

## II.

Because a Michigan court decided Codden's defamation case, Michigan law determines whether that judgment bars his First Amendment retaliation claim. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Res judicata bars a later suit if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004).

Because the parties agree that the state court decided Codden's defamation case on the merits, we move on to the "mutuality requirement." That requirement is met if the earlier suit was between the same parties or their privies. *Howell v. Vito's Trucking & Excavating Co.*, 191 N.W.2d 313, 317 (Mich. 1971).

We start with Stoneman and MAPS. Codden sued them in both cases. So we have the same parties. *Adair*, 680 N.W.2d at 396.

Codden disagrees. He claims that Stoneman and MAPS appeared in different capacities in the state court case and thus were not the same parties. *See Howell*, 191 N.W.2d at 316. He is incorrect. In state court, Codden sued Stoneman in both his individual capacity and in his official capacity as MAPS's superintendent. In the state complaint, Codden alleged multiple times that Stoneman was acting both "on his own behalf and as superintendent of Manistee Area Public Schools" when he took the complained-of actions. R. 9-2, Pg. ID 95. And in its dismissal order, the Michigan trial court treated the suit as being against Stoneman in both capacities. R. 9-4, Pg. ID 106. Although Codden now sues Stoneman in his individual capacity only, Stoneman *the individual* appeared in both suits. That satisfies the mutuality prong.

MAPS was also a party in both cases. Codden says that MAPS appeared in the defamation case and in the First Amendment retaliation case in different capacities because MAPS's liability depends on the actions of Stoneman, and Stoneman appeared in different capacities. But we've already explained that Stoneman appeared in his individual capacity in both suits. So Codden's attempt to characterize MAPS as appearing in different capacities fails as well.

The situation for Raddatz and the School Board members is different because they were not parties in the first case. But, under Michigan law, parties not appearing in a prior suit still satisfy res judicata's mutuality requirement if they share a "working functional relationship" and a "substantial identity of interests" with parties who did appear in the prior suit. *Adair*, 680 N.W.2d at 396 (citation omitted).

Raddatz is an employee of MAPS, and the School Board members constitute MAPS. So they each have a working functional relationship with the board of education. *See id.*; *see also Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 359 (Mich. Ct. App. 2003) (listing

examples of relationships that establish mutuality). They also share a substantial identity of interests. Both Codden's defamation suit and his First Amendment retaliation suit stem from MAPS's failure to renew his contract. And as a school district, MAPS cannot act except through the actions of its employees and Board members. Thus, the claims against Raddatz and the School Board members are intertwined with the defamation suit against MAPS. *See Motuelle v. Ruffini*, No. 244557, 2004 WL 1254304, at *4 (Mich. Ct. App. June 8, 2004) (unpublished opinion). Codden's defamation suit necessarily implicated the actions of Raddatz and the School Board members: Had the case survived dismissal, the central issue would have been whether Stoneman's statement to the press—that the MAPS administrators acted against Codden because of his alleged deception—was true. As a result, Raddatz and the School Board members satisfy the mutuality requirement because of their relationship and common interests with MAPS. *See Adair*, 680 N.W.2d at 396. As the district court noted, a contrary conclusion would allow Codden to bring lawsuits against MAPS administrators one at a time until he received a favorable ruling. That is precisely the scenario that the doctrine of res judicata forbids.

Finally, the third prong of Michigan's res judicata test is satisfied because Codden could have raised his First Amendment retaliation claim alongside his defamation claim in Michigan state court. *Id.* Both claims arise from the same operative facts. And the state court had the ability to hear his case against all the defendants he now lists. *See, e.g.*, *York v. City of Detroit*, 475 N.W.2d 346 (Mich. 1991). Thus, all three elements of Michigan's res judicata test are met for all defendants. The district court did not err in dismissing this case.

We affirm.